# Hunt *v.* The State.

## *Indictment for Larceny.*

1. *Larceny of "hog,"* or *other animal named in the statute; constituents of offense.*—The act amending section 3706 of the Revised Code, approved February 20, 1875 (Sess. Acts 1874-5, p. 259), which makes it grand larceny to steal any cow, sheep, hog, or other animal therein specified, "or any personal property, other than that hereinbefore enumerated, exceeding twenty-five dollars in value," applies only to the *live* animals named, and not to their carcases: the larceny of the carcase, unless it exceeded twenty-five dollars in value, would be petit larceny only.

2. *Same; felonious intent.*—Under this statute, if a person kills a hog accidentally, or recklessly, and afterwards steals and carries away the carcase, or any part of it, less than twenty-five dollars in value, he is not guilty of grand larceny; but, if he kills the animal with the intent to steal its carcase, or any part thereof, and afterwards carries such intent into effect, he is guilty of grand larceny, without regard to the value of the part so stolen and carried away.

FROM the Circuit Court of Bibb.

Tried before the Hon. JOHN HENDERSON.

[Hunt v. The State.]

The indictment in this case, which was found in September, 1876, charged that the defendant " feloniously took and carried away a hog, of the value of six dollars, the personal property of D. M. James." The defendant pleaded not guilty; was convicted, under the charge of the court, and sentenced to imprisonment in the penitentiary for the term of two years. "On the trial," as the bill of exceptions states, " *D. M. James*, a witness for the State, testified as follows : On the 16th July, 1876, witness lost a hog, of the value of six dollars, and found its body, a few days afterwards, in a swamp in the field of Thomas Peters. When he found it, its ears were cut off, and lying near by; its entrails had been taken out; the hams had been skinned, and severed from the body, in a manner which showed that it had been done with a knife, or some other sharp instrument. When witness saw it, it had been dead about three days, and the dogs had been eating it. It was lying in the field of said Thomas Peters, about two hundred and fifty yards from his house, and about three hundred and fifty yards from the defendant's house. There were two other families of negroes living on said place, besides defendant, and about one hundred and fifty yards further off from where he found the hog than the defendant lived. On the same day, after finding the hog, witness arrested the defendant, who thereupon told him, that the other boys were as deep into it as he was, but he, poor devil, had all the blame to bear ; that he killed the hog accidentally; that he, Granville Blakely and Lafayette Davidson were driving out of a lane, which belonged to said Peters, and had a pair of bars at the end, a lot of hogs belonging to witness, and at the request of said Peters, to whom they were employed as agricultural laborers; that in driving said hogs out of said lane, the one killed broke away from the others, and ran past him, and that he threw at it an old axe, which he had just picked up, and accidentally killed it. *Thomas Peters*, another witness for the State, testified, in substance, as follows : On the 16th July, 1876, about nine or ten o'clock, witness was riding through his plantation, and met the defendant and Granville Blakely, both of whom were in his employment, in his field, near the place where the hog was found, and coming from that direction, and asked them if they had seen any hogs in the field, to which they replied, that they had not. Witness then passed on, but returned in about half an hour, and was met by the defendant, with Granville Blakely and Lafayette Jones ; and defendant then told him voluntarily, and before he (witness) had said anything to him, that he had accidentally killed one of Mr. James's hogs. After he met defendant the first time, but

before defendant told him this, witness had found the hog in the swamp in his field.   At the time witness found it, its ears had not been cut off, its hams had not been skinned, and it was in all respects in the same condition as when first killed. Witness saw the hog again the next day; at which time, its ears had been cut off, and its hams skinned and carried away. *Granville Blakely* testified, in substance, as follows :   On the morning of the 16th July, 1876, witness, Lafayette Jones and defendant went out into the field of Mr. Peters, to see if there were any hogs in it; and on their return, about nine o'clock, they found a lot of hogs, belonging to D. M. James, in the lane of said Peters, and endeavored to drive them out; when one of them ran by the defendant, who thereupon threw an old axe at it, and killed it.   Defendant then exclaimed, 'I have killed one of Mr. James's hogs, and I am sorry of it. Let us put it out of the way, as it is of no use to any body. I will tell Mr. Peters about it.   They are all white folks, and will fix it.'   Defendant then carried the hog to the swamp near by, and witness heard him tell Mr. Peters, a short time afterwards, that he had accidentally killed the hog."

"This being all the evidence, the court charged the jury, *ex mero motu*, that if they should believe, from the evidence, that the defendant killed the hog accidentally, and put it in the swamp for concealment, and not with the felonious intent to convert it to his own use, or with intent to deprive the owner of his property therein; still, if they should believe from the evidence, beyond a reasonable doubt, that he afterwards went to the place where he had carried the hog, and there feloniously took and carried away the same, or any part thereof, he would be guilty as charged in the indictment. To this charge the defendant excepted."

W. M. McMATH, for the defendant, cited *Rex v. Holloway*, 1 Car. & Payne, 127; Bishop on Criminal Law, vol. 1, § 314.

JNO. W. A. SANFORD, Attorney-General, for the State.

MANNING, J.—The act of February 20, 1875, "to amend section 3706 of the Revised Code," declares a person who steals any of the animals therein designated, among which "hog" is specified, "or any part of an outstanding crop of corn or cotton," or "any personal property, other than that hereinbefore enumerated, exceeding twenty-five dollars in value," guilty of grand larceny; and that on conviction he shall be punished accordingly.   By the animals designated in this act are meant live beasts, not the carcases, or bodies of those that have been killed.   The stealing of one of these

would not be grand larceny, unless it exceeded twenty-five dollars in value.

From the evidence in this cause, the jury might, perhaps, infer that defendant did not entertain the intent to appropriate to his own use the hog which is the cause of this prosecution, when he killed it. The testimony of some of the witnesses is, that he, with some companions, was endeavoring to turn back and drive out of a lane, leading toward the crops they were cultivating, this and some other hogs, when this one, in dashing by, was killed by an axe, which defendant had in his hand, and threw at the hog. The body was then, some of the witnesses who were present say, dragged into the woods, or swamp, to be put out of sight, and left there; and defendant, shortly afterwards, told Mr. Peters, a white man, whose land he was cultivating, of the killing of the hog, and that he had done it accidentally. If the animal was not killed with the intent, then entertained, of stealing it, or some part of its carcase, but the act was in truth done without any such purpose, though recklessly, the subsequent cutting and taking away by the defendant of a part of the body, in the course of the night following, or the next day, would not make him guilty of grand larceny, the whole hog being of the value of only six dollars. It is the *live* hog that he must intend to steal (which he may, of course, do by killing it and then taking it away), that constitutes grand larceny in such a case. But, if, after it is killed, no matter by whom, if not done by the defendant, or some one with whom he is conspiring, with intent to steal the body, or some part of it, a purpose is afterwards formed, and carried into effect, of taking and carrying away a part of the meat, the person guilty of this is not guilty of grand larceny, or of stealing a " hog," within the meaning of the statute. The act of trespass, and the felonious intent, do not so co-exist, as to make the offender guilty of that crime.—See 1 Bishop on Cr. Law, (3d ed.) § 366 [314], and cases cited in note. It ought, therefore, to have been referred to the jury, to determine whether or not defendant, when he killed the hog, did so with the intent of appropriating it, or any part of it, to his own use, or the use of some body else, not the owner, or of depriving the owner thereof. If he did, he would be guilty, according to the statute, of grand larceny; otherwise, he would not be.

The charge of the circuit judge was, consequently, erroneous; and the judgment must be reversed, and the cause remanded. Let the defendant remain in custody, until discharged by due course of law.