## STATE OF MISSOURI, Respondent, v. CLYDE RHEA et al., Appellants.

Springfield Court of Appeals, June 3, 1912.

1. **CRIMINAL LAW: Larceny: Killing Turkeys: Malicious Mischief.** Defendants were prosecuted for larceny the information charging that "they unlawfully, willfully and feloniously did take, steal and carry away twenty-five turkeys, etc." The evidence showed that defendants killed several of the turkeys by throwing stones at them and after killing them the turkeys were collected into piles, but were not removed and there was no claim that the defendants made any use of the turkeys. *Held*, that the defendants were not guilty of larceny.

State v. Rhea.

2. ———: ———. In order to constitute the crime of larceny it is necessary that the goods be taken with the intent not only to deprive the owner of the use thereof, but to convert them to the use or benefit of the defendant.

3. ———: ———: **Killing Animals.** The mere unlawful killing of animals is not larceny in this state.

Appeal from the Christian Circuit Court.—*Hon. John T. Moore,* Judge.

REVERSED.

*G. Purd Hays* for appellant.

*Fred W. Barrett* for respondent.

GRAY, J.—July 25, 1911, the prosecuting attorney of Christian county filed an information charging that Clyde Rhea, Phil Ellingsworth and W. Lathrop, at said county, unlawfully, willfully, and feloniously did take, steal and carry away twenty-five turkeys of the value of fifty dollars, the property of Thomas F. Coyne. The cause was dismissed as to the defendant, Lathrop, and the other defendants entered pleas of not guilty, and were tried before a jury and convicted of petit larceny, and they appealed to this court.

No briefs have been filed, but we assume from the appellant's motion for new trial they complain of the action of the court in submitting the case to the jury, and in giving certain instructions. The testimony on the part of the state tended to prove that appellants and Lathrop, while walking through a field belonging to one of Coyne's neighbors, saw some old turkeys with their broods of young. The boys killed several of the turkeys by throwing stones at them, and after killing them, they were collected into piles, but were not removed therefrom, and there was no claim that the boys made any use of the birds, but all the testimony tended to show that the boys maliciously

killed the turkeys and in criminal disregard of the rights of the owner. The defendants offered no testimony, and at the close of the state's case, asked the court to instruct the jury to return a verdict of not guilty.

While there was some conflict in the state's testimony as to the ownership of the turkeys, there was sufficient evidence to support the ownership alleged in the information, and the question on this appeal is, whether the state's evidence was sufficient to make a case of larceny.

In the early case of Witt v. State, 9 Mo. 671, Judge Scott defined larceny as follows: "Larceny is defined to be the wrongful taking and carrying away of the personal goods of any one from his possession with a felonious intent to convert them to the use of the offender without the consent of the owner. The taking must be done *animo furandi,* or as the civilians express it, *lucri causa.* . . . To constitute this offense, therefore, in any form, there must be a taking from the possession, a carrying away against the will of the owner, and a felonious intent to convert it to the offender's use."

There is an irreconcilable conflict in the authorities whether, to constitute larceny a taking, must be with a view to some benefit or gain to the wrongdoer, or, as it is sometimes said, whether the taking must be *lucri causa.* In 25 Cyc. 52, it is said: "According to the weight of authority the felonious intent required for larceny is not necessarily an intent to gain advantage for defendant; an intention to deprive the owner of his property is enough. But in a few cases it is held necessary to show that defendant took for his own purpose or *lucri causa.*"

In 18 Am. and Eng. Ency. of Law (2 Ed.), 504, the author does not agree with Cyc. as to the weight of authority, and says: "The question whether, in order to constitute larceny, there must be an intent on

the part of the taker to appropriate the goods, that is, to derive some benefit or gain to himself, an intent which is usually designated as the *lucri causa,* has been and still is the subject of conflicting decisions. The preponderance of authority is to the effect that such intent is necessary, though many authorities take the opposite view, and hold that a mere intent to deprive the owner of his property is sufficient.''

In McClain's new work on Criminal Law, section 568, it is said: ''Some expressions have been used in text-books and opinions indicating that, to constitute larceny, the taking must be with a view to the benefit of the wrong-doer, or, as it is sometimes expressed, the taking must be *lucri causa.* There may be some reason for this doctrine in the attempt to distinguish between larceny and malicious trespass, and for the purpose of making such distinction it may be proper to say that an intent merely to deprive the owner of his property is not sufficient in larceny; but where the intention of the wrong-doer is to deprive the owner of his property by taking it from him, and such intention is carried out by an act which constitutes a taking and carrying away, it certainly ought to be immaterial whether the motive of the wrong-doer is benefit to himself or only injury to the owner, and the great weight of authority supports such a proposition. For instance, where the prisoner, for the purpose of preventing a horse from being used in evidence against an accomplice took it from the prosecutor's stable and killed it by backing it into a coal pit, it was held that the offense was larceny; and this doctrine has been generally followed in the United States. But it still is true that there must be an intent to take the property and not merely to injure it.''

In 3 Greenleaf on Evidence (15 Ed.), sec. 157, the author says: ''A distinction is to be observed between larceny and mere trespass, on the one hand, and malicious mischief on the other. Where the prisoner's sole

object was to destroy the property, from motives of revenge and injury to the owner, and without the expectation of benefit or gain to himself, this also is not larceny, but malicious mischief. For it seems to be of the essence of the crime of larceny that it be committed *lucri causa,* or with a motive of gain or advantage to the taker; though it is not necesary that it be a pecuniary advantage."

In 2 Bishop's New Criminal Law, sec. 846, it is said: "This discarding of the *lucri causa* does not render every sort of evil intent adequate. For example, it does not transmute malicious mischief into larceny. And the purpoe to deprive the owner of his goods by a wrongful act is not alone the felonious mind we are considering."

While as above stated, the authors in Cyc. and the Am. and Eng. Ency. of Law do not agree as to the weight of authority on the proposition, both of them place Missouri as holding that it is necessary, to constitute the offense, that the taking must have been *lucri causa,* and cite the following cases: Witt v. State, supra; State v. Conway, 18 Mo. 321; State v. Littrell, 170 Mo. 13, 70 S. W. 143.

In the Conway case, the court said: "The taking must be done *animo furandi* or *causa lucri.*" And we believe it has been generally understood by the Bench and Bar of this state that in order to constitute the crime of larceny, it is necessary that the goods be taken with the intent, not only to deprive the owner of the use thereof, but to convert them to the use or benefit of the defendant.

In 18 Am. and Eng. Ency. of Law (2 Ed.), 508, it is said: "According to the rule that the *lucri causa* is an essential element of larceny, it is held that taking and carrying away the goods of another merely for the purpose of destroying them in a spirit of wantonness, does not constitute larceny, though it may constitute another crime."

That the mere unlawful killing of animals has not been considered larceny in this state, is supported by the fact that we have a statute (section 4541) providing that such act is larceny, if committed with the intent to steal or convert the carcass or skin or some part of the animal so killed.

According to the state's testimony, the act of the defendants in killing the fowls of the prosecuting witness was malicious, cruel and without a single mitigating circumstance. It is difficult to understand why persons old enough to have any judgment on a question of right and wrong, would commit such a dastardly act. It does not appear that appellants had any personal feeling against the prosecuting witness, but that they killed the fowls simply because they had an opportunity to and could do so. Language is wholly insufficient to properly express the contempt that any fair-minded person has for such conduct. While this is true, the defendants must be prosecuted for the crime they have committed, and not for any other. We are of the opinion that they are not guilty of larceny, and therefore, the judgment must be reversed, and it is so ordered. All concur.