## THE STATE v. MITCHELL HEDRICK, Appellant.

### Division Two, December 4, 1917.

1. **HOG: Carcass.** A defendant charged with stealing hogs cannot be convicted of stealing the carcass of a hog. The carcass of a hog, by whatever name called, it not a hog. The word "hog" means a live animal.

2. ———: ———: **Venue: Failure of Proof.** Defendant was charged with stealing four black hogs in Reynolds County and was indicted in that county. The evidence shows that the hogs were stolen and killed in Dent County, and thereafter their carcasses were taken by defendant and two other persons into Reynolds County, where they were cleaned and divided among them. *Held,* that there was a total failure of proof. Defendant could not under the indictment be convicted of stealing the carcasses of hogs in Reynolds County, because he was not so charged.

3. ———: ———: **Statute.** The statute (Sec. 4535, R. S. 1909) making it grand larceny to steal any "horse, mare, gelding, colt, filly, ass, mule, hog or neat cattle" shows on its face that it is not capable of being construed to embrace those animals when dead.

Appeal from Reynolds Circuit Court.—*Hon. E. M. Dearing,* Judge.

REVERSED AND REMANDED.

*C. R. Wadlow* and *Burford & Chitwood* for appellant.

The carcasses of the animals charged to have been stolen, were not "hogs" within the meaning of Sec. 4535, R. S. 1909, as evidenced by that and various other

acts of the Legislature. Larceny of the carcass of a hog under the value of thirty dollars, is not a felony. Secs. 4535, 4864, 4627, 4548, 771, R. S. 1909; Laws 1917, p. 133. As used in the law the term "animals" includes any animate being, which is not human, endowed with the power of voluntary motion. Upon a general statement that a party stole an animal, it is to be intended that he stole it alive, except where it has the same name, whether dead or alive. Wharton's Criminal Evidence (9 Ed), sec. 124; 2 Cyc. 304. The charge is that appellant stole four black hogs. The proof, aside from the uncorroborated testimony of an accomplice was that the carcass of some hogs were hauled by appellant from the point where they were slaughtered in Dent County, to the point where the carcasses were dressed in Reynolds County. There is a failure of proof of the offense charged. State v. Ballard, 104 Mo. 634.

*Frank W. McAllister*, Attorney-General, *Henry B. Hunt*, Assistant Attorney-General, and *C. P. Le Mire* for the State.

(1) The provisions of Sec. 4541, R. S. 1909, do not apply in this case. Here there was a killing of the animals in question, together with the felonious taking or converting of the same, which, taken together, constitute the crime of grand larceny. (2) Defendant's refused instruction read: "You are instructed that the word 'hog' in law means a live animal and not the mere carcass of an animal." It is agreed by all that after a hog has been killed and converted into meat it becomes personal property and is outside of the statute on which this indictment is based. But, as to whether the mere killing of a hog without further transition or transformation from its natural state removes same from the purview of the statute, is a matter which has never been before this court. However, it was unnecessary for the trial court to define the word "hog," as used in the statute. Under the law and the evidence,

the appellant was aiding and abetting in the felonious taking of hogs which were alive, and, without doubt, within the scope of the statute.

ROY, C.—Defendant was charged in Reynolds County jointly with Ritchey and Strickland with the theft of four black hogs, the property of Bill Grant. He was convicted and sentenced to the penitentiary for three years, and has appealed.

The State's evidence very clearly shows that the hogs were stolen and killed in Dent County near the line between the two counties, and that, after they were killed, the defendant went in his wagon with the other two persons charged and hauled the hogs into Reynolds County, where they were cleaned and divided among them. There is a question on the evidence as to whether this appellant was a party to the transaction prior to the death of the hogs. At the close of the State's evidence the defendant demurred thereto, and the demurrer was overruled.

The defendant asked this instruction, which was refused:

"You are instructed that the word 'hog' in law means a live animal and not the mere carcass of an animal."

He also asked an instruction as to petit larceny in case the jury should find that he had stolen the carcasses of hogs in value less than thirty dollars. It was refused.

I. There was a total failure of proof. Defendant was charged with stealing hogs in Reynolds County. The proof was that they were dead before they were taken into that county. It may be that defendant could be convicted of stealing the hogs in Dent County. It may be possible to convict him of stealing the carcasses of hogs in either Dent or Reynolds County. He cannot be convicted of stealing hogs in Reynolds County, because the hogs, as hogs, were never in that county. He cannot, in this case, be convicted of stealing the carcasses of hogs, because he

is not charged with such an offense. The carcass of a hog, by whatever name called, is not a hog. The dictionary says that a hog is an animal, and that an animal is a living being. A person charged with stealing wheat in value more than thirty dollars may be convicted of grand or petit larceny, in accordance with the proof as to value. But a person charged as in this case cannot be convicted of stealing mere carcasses of any value, great or small. The English cases on this subject are as follows:

In Rex v. Edwards, Russ. & Ry. 497, decided in 1823, the defendants were charged with stealing live turkeys. They were stolen alive and then killed in one county, and then carried into another county. It is there said:

"In Hilary term, 1823, the case was considered by the judges, who held that the word 'live' in the description, could not be rejected as surplusage; and that, as the prisoners had not the turkeys in a live state in Hertfordshire, the charge as laid was not proved; and that the conviction was wrong. And HOLROYD, J., observed, that an indictment for stealing a dead animal should state that it was dead; for upon a general statement that a party stole the animal it is to be intended that he stole it alive."

In the same year there were two cases against one Halloway, decided at *nisi prius* and reported in 1 Car. & P. at pages 127 and 128. In the first he was charged with stealing a "brass furnace" in the county of Hereford. The proof showed that he stole the furnace in the county of Radnor and broke it into pieces which he carried into the county of Hereford. The report of that case states:

"HULLOCK, B., directed an acquittal, and said: Though a prisoner may be indicted for a larceny in any county, into which he takes stolen property, the present indictment must fail, as he never had the 'brass furnace' in Herefordshire, or within five hundred yards of its boundaries; he merely had there certain pieces of brass."

In the other case Halloway was charged with stealing two turkeys. The proof showed that they were dead and were stolen from a larder. It was held that the indict-

ment meant live turkeys, and that the charge should have been that he stole dead turkeys.

In Rex v. Puckering, 1 Mood. C. C. 242, decided in 1829, the defendant was charged with feloniously receiving a stolen lamb knowing that it had been stolen. The lamb had been killed before he received it. It was there said:

"It appeared to the learned judge that whatever may be the case as to many animals, perhaps there might be a different rule as to animals the stealing of which is a capital offence, and it might be a question whether at all events, as to them, when an animal is mentioned it does not mean a live animal. He therefore respited the judgment, in order that the opinion of the learned judges might be taken. This case was considered at a meeting of the judges in Michaelmas term, 1829, and they all agreed that the conviction was good, it being immaterial as to the prisoner's offence whether the lamb was alive or dead, his offence and punishment for it being in both cases the same."

Commonwealth v. Beaman, 8 Gray, 497, a Massachusetts case decided in 1857, discussed the English cases, and held that where the stealing of an animal is charged it means a live animal. State v. Donovan, 1 Houst. Cr. Cases (Del.), 43, was decided in 1858. The report of that case contains the following:

"The court stopped the Attorney-General, and GILPIN, C. J., remarked that there were three decisions on the point in the English reports, the last of which had ruled that where the animal is called by the same name, either dead or alive, it is competent under such an indictment as this to prove the stealing of them in a dead state; and shad, he believed, had but that one name whether dead or alive."

It should be noted that none of the above cases involved a statute such as we have here. Indeed the Puckering case above mentioned, which is the leading one on that side, expressly bases its ruling on the ground that the offense and its punishment were the same whether the animal stolen were alive or dead.

If we concede that the Puckering case is right, the question arises, is the punishment in this State for stealing dead hogs the same as that for stealing live ones? In other words, does our statute make it grand larceny to steal either live or dead hogs regardless of value? That statute, Revised Statutes 1909, Section 4535, makes it grand larceny to steal any "horse, mare, gelding, colt, filly, ass, mule, hog, or neat cattle." On its face it is not capable of being construed to cover those animals when dead. Bishop on Statutory Crimes (3 Ed.), sec. 426, note 13, says that such statutes apply to live animals. All the decided cases we can find in any of our sister states hold the same thing. [Golden v. State, 63 Miss. 466; People v. Smith, 112 Cal. 333; Hunt v. State, 55 Ala. 138; Thompson v. State, 30 Tex. 356; Ballow v. State (two cases), 42 Tex. Cr. R. 261 and 263.] In the first of the last two cases it was held that where hogs were stolen and killed in one county and then carried into another county, there could be no conviction for stealing hogs in the latter county.

In this case the instruction in the nature of a demurrer to the State's evidence should have been given.

The judgment is reversed and the cause is remanded.

*White, C.,* concurs.

PER CURIAM:—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All of the judges concur.