[Criminal No. 778.  Filed October 18, 1932.]

[15 Pac. (2d) 242.]

C. L. DAVIS, Appellant, v. STATE, Respondent.

Mr. M. C. Burk and Mr. G. V. Hays, for Appellant.

Mr. K. Berry Peterson, Attorney General, Mr. J. R. McDougall, Assistant Attorney General, and Mr. Lloyd J. Andrews, County Attorney, for the State.

LOCKWOOD, J.—C. L. Davis, hereinafter called defendant, together with John C. Davis and Robert J. Sigmund, was informed against for the crime of grand larceny. A severance was granted and defendant was duly tried to and convicted by a jury and sentenced to serve from three to ten years in the state penitentiary, and from the verdict and judgment he has taken this appeal.

There are some six assignments of error, each of the first three containing several subdivisions, but we shall consider them in view of the legal questions raised thereby rather than in their numerical order.

The first question is whether or not the evidence sustains the verdict. In order that we pass intelligently on this question it is necessary that we state the facts, and, in so doing, we must, of course, view the evidence most strongly in favor of the state. *Macias* v. *State,* 36 Ariz. 140, 283 Pac. 711; *Cole* v. *State, ante,* p. 1, 15 Pac. (2d) 238, just decided.

Shortly before sundown on the evening of November 6, 1931, two cowboys, Dick Conley and Jess Crooks, were riding the range some six or seven miles to the southwest of Buckeye in Maricopa county. While so doing they noticed a Dodge truck standing on an old desert road. They saw some cattle tracks near the truck and followed them for about half a mile, when they saw a man, whom they afterwards discovered to be defendant, jump up and run around a little hill. They went to the place where the man was first seen and discovered the animal

which is the subject of the information lying dead on the ground with its head partly cut off. They then rode around the hill to where defendant had run, and, after a little conversation, he informed them that he had killed the cow in question by mistake, claiming that he thought he was shooting at a deer and had wounded the cow and then decided he had better go ahead and finish the job by killing it. They went back to the animal and the two cowboys discovered that it belonged to Arthur and John Beloat. One of the cowboys then went a few miles to the camp of Arthur Beloat, one of the owners of the cow, while the other remained concealed a short distance away from the truck. John C. Davis and Robert Sigmund came over to the truck and, after some conversation with defendant, the two former started away in the truck while defendant went back to the dead cow. Crooks then stopped Sigmund and John Davis, telling them they would have to wait until Conley returned, which he did shortly in company with Lum Pate. They went over to the dead cow and found that the two hind quarters had, in the interim, been severed from the rest of the body and carried some twenty or thirty yards away to the shade of a small tree. Defendant was not then at the body of the cow but shortly afterwards came up. After some conversation the two Davises and Sigmund were notified that they were under arrest and were taken to the camp of Beloat and afterwards to Buckeye. At the Beloat camp defendant offered to turn over to Beloat a tractor and truck belonging to him if the latter would not "turn him in," but the offer was refused. Within two days from the time of the arrest various witnesses skilled in trailing went out to the scene of the alleged crime and discovered two empty cartridges which fitted the rifle used by defendant, about 150 feet from where blood stains would indicate the cow had first been shot, and shoe

tracks at that point apparently made by defendant's shoes. The ground between the place where these last tracks were found and where the cow was shot was open and the view unobstructed. The cattle tracks at that point showed that the cow after being shot had run perhaps 300 feet before she dropped dead. Another set of cattle tracks starting in the same vicinity were found, with blood dripping along them, which ran some three or four miles away from the scene of the shooting and shoe tracks corresponding with the shoes worn by the defendant, John C. Davis, and Sigmund following the cattle tracks for a mile or more. Defendant on the stand admitted shooting, killing and skinning the cow and placing the two hind quarters where they were found, but claimed at this time that he thought he was shooting a white horse, stating that he and his companions had gone out on the desert to get a load of wood and incidentally to kill some wild horses which they understood were out in that vicinity.

There is no question in our minds that a jury would be justified from this evidence in finding that defendant, with his comrades, went out in the desert for the purpose of killing some cattle and carrying away the meat, and that defendant did kill the particular animal described in the information, partially cut it up and remove the hind quarters to the distance mentioned. Such being the case, the evidence does sustain the verdict if it sufficiently shows asportation.

And this brings us to the next legal question and the one most strenuously argued by counsel for defendant. Was the asportation shown by the evidence sufficient to sustain a conviction of grand rather than petit larceny? In order to constitute the crime of larceny, a felonious taking alone is not sufficient. It must be followed by an asportation or carrying away sufficient to supersede the possession of the owner for

an appreciable time. Hence the crime is not complete until there has been an asportation. On the question of what is a sufficient carrying away, all the authorities hold that the felony lies in the very first act of removal of the property and therefore the least removing of the thing taken, with intent to steal it, is sufficient. It is contended by defendant, however, that the asportation must be of the whole of the article which it is alleged has been stolen, and not merely a part thereof, and that, since under the information in this case the grand larceny would require the stealing of an entire living cow and not a part of a dead one, he could be convicted at the most merely of larceny of the hind quarters, which would reduce the offense to petit larceny unless the hind quarters were of a value of more than $50. The precise point made does not seem to have been passed on in many jurisdictions. We are not, however, entirely without authority on the question. In the case of *People* v. *Smith,* 112 Cal. 333, 44 Pac. 663, the court states as follows:

" . . . By our statute, 'larceny' is defined to be 'the felonious stealing, taking, carrying or driving away the personal property of another.' Pen. Code, § 484. The offense is divided into two degrees,— grand larceny and petit larceny. It is grand larceny (1) when the property taken is of a value exceeding $50; (2) When the property is taken from the person of another; (3) when the property taken is a horse, mare, gelding, cow, steer, etc. In all other cases it is petit larceny. Pen. Code, §§ 486–488. To make the stealing of one of the animals named, however, grand larceny, the animal must be a live one, and not a dead carcass. It is true, if one should kill one of the animals for the purpose of stealing it, and then take and carry away the whole *or a part of the body,* it would be grand larceny." (Italics ours.)

In *Hunt* v. *State,* 55 Ala. 138, the court also held that, if a defendant kills an animal, the theft of which

is made with intent to steal its carcass, or any part thereof, and afterwards carries such intention into effect, he is guilty of grand larceny without regard to the value of the part carried away. After all, the vital part of the crime of larceny is the intent of the defendant to deprive the true owner of his property and some overt act in carrying out such intent. We hold, therefore, following the two cases just cited, that where a defendant, with intent to steal a live animal, or any part thereof, kills the animal and in pursuance of such intent removes any part of it, such evidence shows sufficient asportation to satisfy the statute and sustain a conviction.

Some courts have gone even further than this. The case of *Lundy* v. *State*, 60 Ga. 143, presents facts almost identical with the case at bar, and the court stated the law to be as follows:

"This cow was alive, in the woods, under the dominion and in the legal possession of her owner. Whilst in this condition, she was shot by the defendant, who, with his companion, took possession of her, handled her, moved her about sufficiently to accomplish the task of skinning her to a considerable extent, had complete dominion over her, and would have taken her off, skin and all, in all human probability, but for their fright at the barking of a dog, and the apprehended approach of a number of men. The position of the cow must have been changed from that in which her owner left her free to move. If she was shot standing or running, it is clear that she changed position; if she was lying down, her position, in all likelihood, was changed when she was shot; in the handling her to be skinned, as far as they had progressed, the trespassers must have moved the carcass about somewhat; they had taken her out of the dominion of her owner, and deprived her not only of her freedom of locomotion, but of her position, where her owner willed that she should remain at her will; and their act of skinning her is conclusive that her being shot by them was not merely malicious mischief, but that the shot was fired with the felonious

intent to appropriate her to their own use—to eat beef which belonged to another without paying for it, or to sell it without title, or, perhaps, to do both— eat some and sell the balance.''

The cases relied upon by counsel for defendant, in our opinion, either do not present the same question as that involved in the case at bar, or state a rule of law not in harmony with the better and more modern opinions. *Williams* v. *State,* 63 Miss. 58; *State* v. *Rhea,* 164 Mo. App. 666, 147 S. W. 1096; *State* v. *Hedrick,* 272 Mo. 502, 199 S. W. 192, L. R. A. 1918C, 574.

The next thing we consider is the ruling of the court on the admission of evidence. There are two general objections. One is that certain evidence was admitted in regard to acts done by or things in the possession of the other defendants, John C. Davis and Sigmund. We are of the opinion the whole evidence shows such a common plan or design on the part of the two Davises and Sigmund that anything done by one was admissible as against the other on the question of intent. The second objection is to the admission in evidence of certain alleged statements of defendant after his arrest. The objection in substance seems to be that these statements were involuntary in their nature. We have examined the transcript of evidence carefully and are of the opinion, first, that the statements were admissions against interest rather than confessions and therefore admissible under the rule laid down in *Lawrence* v. *State,* 29 Ariz. 247, 240 Pac. 863. And, second, even if they be considered as confessions, there is no showing that they were not voluntary. In some states it is held that, before a confession made by a defendant may be offered in evidence, it must be shown that he was warned that what he said might be used against him. While, of course, it is better that arresting officers warn defendants in this manner,

we have held that it is not absolutely necessary in order to render a confession admissible. The only thing required is that it must appear to the reasonable satisfaction of the trial court that the confession was not obtained by threats, coercion, or undue influence. *Kermeen* v. *State*, 17 Ariz. 263, 151 Pac. 738; *Laub* v. *State,* 24 Ariz. 175, 207 Pac. 465.

The next assignment of error is that the court refused to give a certain instruction requested by the defendant. This instruction, in substance, sets forth the position of defendant in regard to asportation, to wit, that the asportation of a part of the carcass of the cow would not be sufficient to sustain a conviction of grand larceny. In view of what we have previously said, the court did not err in refusing it.

The next question is whether the court unduly restricted the argument of counsel for defense. In this behalf it appears from the record that counsel attempted to argue that, as a matter of law, asportation of part of the animal was not sufficient to sustain a conviction. The following colloquy then ensued:

"The Court. Well, Mr. Hays, the Court has ruled that there has been a sufficient asportation, and therefore, I will not permit you to argue that question to the jury—that is, as a matter of law.

"Mr. Hays. Well, that is a matter of law, your Honor,—

"The Court. And you must argue the facts.

"Mr. Hays. —to the extent of whether it has been proved or not.

"The Court. Well, I am holding that it has been proven that there is a sufficient asportation to make out the larceny, so that part is not a question for the jury at all."

Had defendant denied the moving of the two hind quarters of the animal, the remark of the court would indeed have been a comment on the evidence and reversible error, but he not only did not deny it, but admitted it upon the stand during the trial of the

case. Such being the fact, we think it was not error for the court to assume as an undisputed fact what the state claimed to be true and the defendant admitted to be true. *Gila Water Co.* v. *Gila Land & Cattle Co.,* 28 Ariz. 531, 238 Pac. 336; *Reid* v. *Topper,* 32 Ariz. 381, 259 Pac. 397. And, if the fact existed, it was the duty of the court to determine whether, as a matter of law, such fact constituted asportation, and it would have been improper for counsel to argue the legal question to the jury. We see no error in this statement by the court.

There are two other objections to instructions given by the court, and, if the instructions complained of stood alone, it is possible they would be error. We have repeatedly held, however, that instructions cannot be considered alone, but must be taken as a whole. *Macias* v. *State, supra.* We have examined carefully the instructions complained of in the light of the instructions as a whole and are satisfied that the jury could not possibly have been misled thereby, and that the law was correctly stated by the court. This disposes of all of the legal questions presented by the various assignments of error. The judgment of the trial court is affirmed.

McALISTER, C. J., and ROSS, J., concur.