185 P.2d 757

STATE v. ROMO et al.

No. 971.

Supreme Court of Arizona.

Oct. 14, 1947.

Robert R. Weaver, of Phoenix, for appellants Joe N. and Andrew N. Romo.

Greg Garcia, of Phoenix, for appellant Reynaldo J. Abril.

John L. Sullivan, Atty. Gen., John W. Rood, Asst. Atty. Gen., and Francis J. Donofrio, Co. Atty., and Warren L. McCarthy, Deputy Co. Atty., both of Phoenix, for appellee.

LA PRADE, Justice.

Appellants Andrew N. Romo, Joe N. Romo (brothers) and Albert Barbo Cruz, Jr., by information, were jointly charged with the crime of forcible rape, a felony, upon one ——— (name omitted). By a separate information, appellant Reynaldo J. Abril was charged with the same offense growing out of the identical occurrence from which the charge originated against the other appellants. By stipulation in the lower court the two cases were consolidated for trial and the several defendants were tried jointly. From judgments of conviction they have appealed. We will hereafter refer to appellants as defendants.

The evidence shows that at about midnight on June 15, 1946, the complaining witness ———, with an escort and a party of men and women, went to the Nachos Cafe on South Central Avenue in the City of Phoenix, for the purpose of dining. After entering the cafe the complaining witness felt ill and went outside with one of the girls in the party. Shortly thereafter two of the men in the party came out to the automobile where the complaining witness was seated. At this time for a reason not apparent the two men, one by the name of Davenport, became involved in a vicious fight with some or all of the defendants. Davenport was knocked to the ground. When the complaining witness went to assist him she was struck on the jaw with a pair of brass knuckles by defendant Cruz and knocked unconscious. Other members belonging to the party of the complaining witness also became involved in the fight. For some reason not satisfactorily explained all members of this party retreated into the cafe. During the excitement the complaining witness was left lying on the sidewalk. Some of the defendants picked her up and loaded her into an automobile which they had present in front of the premises. She was driven away by defendant Abril accompanied by the two Romo boys. They drove to a secluded spot somewhere off of South 15th Avenue. Defendant Cruz and a Mexican boy by the name of Eulalio Villaverde followed the other defendants in the car of Villaverde, who was called as a witness. He testified that he did not know that the complaining witness was in the car with the other boys; that he was present when the fight started; that he avoided the fight and walked away one block and watched from a distance; that at the request of Cruz he followed the other car; that as they approached the other car it

stopped; that when he pulled up someone in the car yelled "Stop! Look what we got here"; and that Cruz got out of the car, joined the others, and that he drove away. With reference to this occurrence in overtaking the first car, defendant Cruz, in a statement which he later gave to the county attorney and which was admitted in evidence, stated that he addressed the occupants of the first car as follows:

"A. I told him, 'Why didn't you stop at the hospital?' He said, 'Are you crazy?' And so they say, 'Look what we got here in the back.' I looked down and I saw the white woman, and Nito was in back with her and Nito's brother was with Reynaldo in the front seat.

"Q. All right. Then what happened? A. Oh, we started ——— her.

"Q. Who ——— her first? A. Nito."

The complaining witness was found next morning lying on a bed in the home of a Mexican family, whom she did not know, nor did she know how she got there. She stated that she was unconscious at all times after she was hit except for a brief moment when she saw a streetlight at a time when she was walking in the street. At the time she was awakened she was in a state of nervous prostration; her shoes and stockings were gone and her dress was torn and very dirty. One side of her face, eye, and neck was badly bruised and discolored and she was bleeding from the mouth. She was taken to a hospital for examination and treatment. The doctor examined her vagina and took smears of the vaginal mucosa and urethra.

One of the glass slides upon which the smears were taken was initialed "U" and the other was initialed "V." The two slides were handed to an assisting nurse who wrapped them in sterile gauze and took them to the hospital laboratory. To the slides there was attached a requisition for a microscopic examination to determine whether or not spermatozoa were present. The nurse who delivered the slides to the laboratory testified that she spoke to the medical technician in the laboratory, calling her attention to the slides, and that the technician saw her lay them down. The technician testified that she did not recall the conversation testified to by the nurse; that the first time she saw the slides they were in the laboratory; that the requisition concerned one ———; that she was requested to make an examination promptly and to submit her report; that the report of the examination was submitted within a few hours after the delivery of the slides to the laboratory; and that she personally stained the slides, using both a Wright and a Gram stain. This technician was called as an expert witness. Her qualifications disclosed that she was graduated from the University of Kansas with an A. B. degree, having majored in bacteriology. Upon graduating she took an additional year's training as a technician at the University of Kansas Hospital in Kansas

City, Kansas. She had been continuously employed as a medical technician for nine years prior to making the examination in this case. She is registered with the technicians' society that is associated with the American Clinical Pathologists. She testified that she performed routine laboratory tests, chemical, bacteriological, and serological, and that it was a common occurrence for her to examine smears to determine the presence of spermatozoa. She further testified with reference to the slides as follows:

"A. The first group of slides marked 'urethral' we found many degenerative forms, that is forms of sperm cells that were degenerated but we found a few intact, complete with their tails on the smear. On the other one we also found intact sperm cells."

The prosecuting witness did not know whether or not anyone had had sexual intercourse with her after she was struck. She testified that she had been divorced from her husband for more than one year prior to the occurrence, and that since her divorce she had not voluntarily had sexual intercourse with any person.

A police officer testified that the two Romo boys and Cruz admitted that they had sexual intercourse with the prosecutrix at the time and place referred to by the witness Villaverde. All three of these defendants in their statements to the police officer denied that they had used any force or violence to coerce the prosecutrix to submit to the acts of sexual intercourse. They said that she was entirely conscious and readily submitted. Later, complete statements were taken from defendants Cruz, Abril, and Andrew Romo. The statements were secured by the county attorney in the presence of several officers and two official court reporters, who took shorthand notes and later transcribed them. These statements were offered and read to the jury. In all of these statements defendants readily admitted having had sexual intercourse with the prosecutrix in the rear seat of the car at a time when all four of them were present and in the presence of each other. Each one endeavored to exculpate himself by testifying that the prosecutrix was at all times conscious, readily submitted, and even asked them to perform the act.

■ Defendants objected to the competency of the testimony of the medical technician upon the ground that she should not be permitted to give opinion evidence as to her interpretation of the slides when the slides were not produced in court and made available to the defendants. Their objection was overruled. They also objected to testimony of the medical technician and contended that she should not be permitted to testify upon the ground that the slides that she examined had not been sufficiently identified as being the identical smears taken from the body of the prosecutrix. Their objection and the adverse ruling of the court constitute two of the

assignments of error. We are of the opinion that this latter assignment of error is without merit. Our delineation of the facts leaves little doubt as to the identity and integrity of the slides that were examined. All of defendants moved to strike the testimony of the medical technician upon the ground that it did not, independently of the admissions of defendants, establish the corpus delicti of the crime. Defendants all objected to the receipt in evidence of the admissions of defendants upon the ground that the corpus delicti had not been established, and that the admission of the statements, or as they contend confessions, before the corpus delicti was established by evidence aliunde was contrary to law and constituted prejudicial error.

Defendants Romo also assigned as error the ruling of the court rejecting their offer of proof that the extrajudicial statements of these two defendants were obtained by threats and violence. The statements were admitted on the theory that they were admissions exculpatory in nature and not confessions of guilt.

Defendant Joe Romo also assigns as error the ruling of the court refusing a directed verdict as to him. In this behalf he cites the testimony of the police officer and insists that it does not show any sexual penetration. In this behalf the officer testified that Joe Romo told him that they had put the prosecutrix out of the car on 15th Avenue. This conversation was had at a time when the police officer was interrogating Romo with reference to the disappearance of the girl. The officer then testified:

"A. * * * I asked him if he had had intercourse with the girl and he said yes, that he had. I asked him how they got the girl and he said that he whipped the man that was with her down at Nachos Cafe. * * *"

"A. I asked him if they had taken advantage of this girl and he stated that they all had, * * *"

"A. I asked him what the girl did, if she fought him and he said no, she just laid there. I asked him if she put up any protest or fought while all of these boys were having intercourse with her and he said no, that she just laid there and didn't do anything."

It is the contention of defendant Joe Romo that these statements attributed to him do not show an admission of sexual intercourse, and that perhaps some other intercourse or dealings other than sexual intercourse were referred to. In view of the purpose of the officer's inquiry and all the attendant circumstances, we are satisfied that defendant Joe Romo was not discussing commercial intercourse, and that he well knew the intended meaning of the questions put to him and the effect of his answers. See Wagner v. State, 43 Ariz. 560, 33 P.2d 602.

■ Defendant Andrew Romo assigns as error the refusal of the court to direct a verdict in his behalf for the reason that the extrajudicial evidence against him negatives sexual penetration. His statements as related by the county attorney were as follows:

"Q. You were in the back of the car? A. Yes.

"Q. Where were Albert and your brother? A. In front.

"Q. How long did you take? A. I didn't took, because I couldn't do it, I feel too weak. I didn't even finish. I got off of her.

"Q. Who did it next? A. My brother was last.

"Q. Albert Cruz second? A. Yes, my brother was last.

"Q. Your brother was last? A. Yes.

"Q. How long did it take for all three of you to have intercourse with her? A. Just like that, and then we told her —"

Our observation and ruling as to the sufficiency of the evidence in the preceding paragraph we feel is entirely applicable to this evidence, and we hold it to be legally sufficient to establish the fact of sexual penetration.

■ At the trial the Romo boys were represented by Mr. Robert R. Weaver; defendant Abril by Mr. Greg Garcia; and defendant Cruz by Mr. George Sterling. The Romo boys filed a joint notice of appeal; defendants Abril and Cruz filed separate notices of appeal. Defendant Cruz did nothing to perfect his appeal other than the filing of his notice of appeal. The several appeals were docketed here as one case. Having been consolidated for trial below, the transcript of evidence is applicable to all the defendants. All the papers are here. Regardless of the fact that defendant Cruz has filed no briefs and made no assignments of error, under our rule we are compelled to examine the record for fundamental error, and have done so, as will more specifically appear hereafter. All of defendants have appealed from the judgment and sentence, the denial of their motions for a directed verdict, and the denial of their several motions for a new trial. Defendant Cruz also appealed on the ground that the sentence was illegal and excessive.

The first assignment of defendants Romo was to the effect that the court erred in the admission of the testimony of the medical technician in allowing her to give "expert testimony" in regard to evidence not before the court or jury—the slides interpreted by such testimony having been destroyed before the trial. The medical technician, some weeks after she made the examination and gave her written report to the doctor, destroyed the slides. She had not been asked to preserve them and said it never occurred to her to keep them, and that they had been destroyed as a matter of laboratory routine. She further tes-

tified that had the slides been retained they would not have deteriorated for a period of possibly two years. She also admitted on cross-examination that if the slides were then present another expert might differ with her report as to what appeared on the slides. It further appears that the head medical technician also examined the slides. The assistant technician testified as follows:

"A. * * * We examined them when the slides were brought in because there were some telephone calls about them and we gave our report immediately. Our report was written out before noon on that certain day."

Defendants' proposition of law in support of this assignment is as follows:

"Expert testimony as to his opinion is not evidence of fact in dispute, but is advisory and admissible only to assist triers of fact to understand and apply testimony of other witnesses. (Citing Evans v. Cavanagh [58 Idaho 324], 73 P.2d 83; Hornby v. State Life Ins. Co., 106 Neb. 575, 184 N.W. 84, 18 A.L.R. 106; 20 Am.Jur., Evidence, Sec. 787.)"

We are of the opinion that defendants in this respect failed to distinguish between fact testimony and opinion testimony. If an expert witness testifies as to facts based on personal observation he is giving fact testimony. A careful reading of the transcript of the testimony discloses that the medical technician did not state her opin-ion as to what the slides disclosed, but rather gave fact testimony acquired by her observation of a physical fact. It is as if she had said, "It was a rheostat that I saw." She did not say "In my opinion it was a rheostat." The question propounded to her was:

"Q. * * * will you state what you found on these slides as the result of your microscopic examination? A. The first group of slides marked 'urethral' we found many degenerative forms, that is forms of sperm cells that were degenerative but we found a few intact, complete with their tails on the smear. On the other one we also found intact sperm cells."

Then this question was propounded.

"Q. Will you for the benefit of the jury tell the jury what a sperm cell looks like? A. Yes, gladly. A sperm cell has a head to it, a round head and a long tail. It doesn't look like any other bacteria that you might find on a slide. It takes a dark stain and we stain them with a specific kind of stain, takes a dark stain and it stands out. The head is very good size, there is no chance of mixing it up with smaller micro-organisms because it is much larger."

When an expert witness gives his opinion or conclusion based solely on assumed facts as to the effect of facts presented during the course of the trial, he is giving an expert opinion. In the latter case the requirement is that the expert

base his conclusion only on the facts in evidence so as to enable the jury to interpret those facts of which they have no understanding. State v. Gevrez, 61 Ariz. 296, 148 P.2d 829; Evans v. Cavanagh, 58 Idaho 324, 73 P.2d 83. There is considerable confusion in the reported cases as to whether an expert witness may testify as to his opinion as to the ultimate fact in issue, and if he can testify as to the ultimate fact whether his testimony must be in the form of an opinion or whether it may be in the form of a fact. See Note in 78 A.L.R. 755. Many courts hold that an expert witness may not give his opinion as to the ultimate fact in issue on the ground that such testimony invades the province of the jury.

In criticizing the position of these courts, it is said in 11 R.C.L. p. 583:

"Thus, it has been held also that an expert may state that a certain cause may have produced the result under consideration, but cannot state that in his opinion it did produce it. But it is evident that this supposed rule, when stated broadly as it often has been stated, involves great confusion of thought and leads to absurd consequences. It is certainly singular that a class of evidence which is admitted when it is only slightly pertinent should be rejected when it is of the highest pertinency. Irrelevancy is made a ground of admission, and relevancy of exclusion. Such evidence invades the province of the jury no more than does direct evidence of an eyewitness to a decisive fact. In either case, if the jury are satisfied of the trustworthiness of the evidence, it may be conclusive of the issue; but their duty is no more invaded in one case than in the other. Every expert opinion rests on an assumption of facts; if the opinion is given upon a hypothetical question, its weight depends wholly on the jury finding that the assumed facts have been proven; *if it is based on the expert's own testimony as to the facts,* the truth of this testimony is no less open to their belief or disbelief; and, in addition, the soundness of the opinion itself is to be determined by the jury in consideration of its apparent reasonableness or their confidence in the skill and trustworthiness of the witness, and of any contradiction from other experts. The rule leads to absurd results in its applications. Thus, it is held that an expert may testify to the value of land before an alteration and to its value afterward, and that the court must charge the jury that the difference in value is the measure of damages, but that the expert cannot express an opinion as to the amount of damages. The technicality of the distinction is illustrated by the holding that facts may be elicited from the witness, from which the ultimate conclusion inevitably follows, though that conclusion cannot be stated. The court in so declaring, however, admitted that the difference was largely one of form * * *. It seems safe to say, however, that the modern tendency is decidedly towards the more liberal practice, and

that sooner or later no distinction will be made between evidential and ultimate facts as subjects of expert opinion." (Emphasis supplied.)

On the other hand, many other courts, and in some instances the same courts, in allowing the expert witness to state his opinion as to the ultimate fact in issue, if not in terms, at least in effect, repudiate the contrary position. See Cropper v. Titanium Pigment Co., 8 Cir., 47 F.2d 1038, 78 A.L.R. 737; Illinois Power & Light Corporation v. Hurley, 8 Cir., 1931, 49 F. 2d 681, 30 N.C.C.A. 602 (holding that the fact that questions asked of an expert witness involved some ultimate fact to be determined by the jury did not render them objectionable); Carpenter v. Walker, 1910, 170 Ala. 659, 54 So. 60, Ann.Cas.1912D, 863, 2 N.C.C.A. 371; Giraudi v. Electric Improv. Co., 1895, 107 Cal. 120, 40 P. 108, 28 L.R.A. 596, 48 Am.St.Rep. 114.

■■ The ultimate facts in the instant case were to determine whether the prosecutrix had been forcibly raped and if so were the defendants guilty. One link in the elongated chain of evidence was the circumstantial fact that spermatozoa were found in the vaginal tract of the complaining witness. We are not here so much concerned with the divergence of opinion as to whether an expert witness may testify as to his opinion as to the ultimate fact in issue, and, if he can testify as to the ultimate fact, whether his testimony must be in the form of an opinion or

whether it may be in the form of a fact. We make this observation for the reason that the ultimate fact in issue to be determined was: "Has the crime of rape been committed?" The ultimate issue was not whether spermatozoa were discovered in the vaginal tract of the complaining witness. It is true in this instance that only a highly trained person could testify as to the existence of the physical fact—the presence of sperm cells. That only a medical technician or other similarly trained person is able to discern such facts does not preclude an expert witness from testifying as to the presence of physical facts which he is able to see or discover by his senses. A witness is not precluded from testifying because he can see more variations and shades of color than the ordinary person. The testimony of a physician is not inadmissible where he testified in court as to the condition of a patient one year previous to the giving of his testimony. The patient may be in court but the past physical condition of the patient may be presently nonexistent, in which case the truth of the testimony is subject to belief or disbelief. Whether the testimony be considered an opinion or a statement of fact it is for the jury to consider its apparent reasonableness, and their determination will be reached by their confidence in the skill and trustworthiness of the witness.

■ Secondary evidence is admissible to prove the contents of a lost or de-

stroyed document, 20 Am.Jur., Evidence, sec. 437, provided the non-production of the document is satisfactorily explained or accounted for. Id. There was no suggestion of fraud in the failure to produce the slides in evidence. The slides were made by persons having superior technical training and made in the course of routine examinations where ordinarily competency and integrity exist in the highest degree. In support of the assignment under consideration defendants have directed our attention to the case of Jolman v. Alberts, 192 Mich. 25, 158 N.W. 170, which holds that an expert witness will not be allowed to testify as to what an X-ray picture shows in the absence of the picture. This was a negligence case growing out of an automobile accident. The two facts at issue were: First, whether or not there was negligence; second, the amount of damage. Plaintiff claimed that she had suffered a fracture of the spine, and proposed to have the physician testify that the X-ray disclosed a fracture. One of the ultimate facts was whether or not there was a fracture. The court excluded the proffered testimony on the ground that the picture was the best evidence, and that there could be no cross-examination of an expert interpreter in the absence of the thing to be interpreted. We are not disposed to quarrel with this holding predicated upon the facts then before the court. As above pointed out, in our case the presence or absence of spermatozoa was not the ultimate fact.

It was only one link in a chain of circumstances. In view of our holding hereafter that the corpus delicti can be established by aid of admissions or confessions corroborated by other relevant facts and circumstances, we conclude that it was not error for the court to permit the medical technician to testify as to a physical fact where the slides were not in evidence whether her testimony be considered factual or by way of opinion.

We shall now consider the assignment of defendants Romo to the effect that the court erred in admitting in evidence their statements without first having determined as a preliminary question of fact whether the statements were freely and voluntarily made. It is the rule in this jurisdiction that where a confession of defendant is offered in evidence it becomes necessary for the trial court to ascertain and determine as a preliminary question of fact whether it was freely and voluntarily made. Mangum v. United States, 9 Cir., 289 F. 213 (in error to the District Court of the U. S. for the District of Arizona); Indian Fred v. State, 36 Ariz. 48, 282 P. 930; Kermeen v. State, 17 Ariz. 263, 151 P.2d 738. The rule against admission of statements not voluntarily made applies only to confessions and not to statements against interest. Lawrence v. State, 29 Ariz. 247, 240 P. 863. As pointed out in the latter case, the statements which were offered and received in the case here are not

confessions but admissions exculpatory in nature and a denial of any guilt. The difference between confessions and admissions against interest is well pointed out by the Supreme Court of Kansas in State v. Campbell, 73 Kan. 688, 85 P. 784, 788, 9 L.R.A.,N.S., 533, 9 Ann.Cas. 1203, in which the court says:

"A 'confession,' in a legal sense, is restricted to an acknowledgment of guilt made by a person after an offense has been committed, and does not apply to a mere statement or declaration of an independent fact from which such guilt can be inferred * * * (Citing cases.)."

See also Davis v. State, 41 Ariz. 12, 15 P.2d 242.

▬▬▬ The language of Superior Court Judge DeConcini, speaking for this court in McDaniels v. State, 62 Ariz. 339, 158 P.2d 151, 155, is apropos. It is there said:

"* * * These previous statements were mere admissions of fact, which might or might not prove incriminating in their effect, and did not constitute a confession of guilt. The statements were freely made by accused without any threat, mistreatment, coercion, or any force which might render the statements involuntary. If anything, accused's statements were exculpatory. The fact that such admissions, coupled with other facts proved at the trial, tended to establish accused's guilt of crime charged, does not require the county attorney to lay the same founda-

tion as for a confession, and the evidence was therefore properly admitted. Lawrence v. State, 1925, 29 Ariz. 247, 240 P. 863, rehearing denied 29 Ariz. 318, 241 P. 511, and certiorari denied 269 U.S. 585, 46 S.Ct. 201, 70 L.Ed. 425."

The court did not err in refusing to hear the proffered testimony by way of prelim inary examination to determine whether or not the statements had been freely and voluntarily given. This ruling also disposes of the assignment of error by defendant Abril to the effect that the court erred in receiving in evidence his statement which was obtained by the county attorney by way of question and answer at a time when defendant was not represented by counsel. A confession or admission against interest is not inadmissible where freely and voluntarily made in response to questions propounded by any public officer. Wagner v. State, supra; Kinsey v. State, 49 Ariz. 201, 65 P.2d 1141; 20 Am.Jur., Evidence, sec. 500.

▬▬▬ Defendants at the close of the state's case and at the close of the whole case made a motion for an instructed verdict on the ground that the corpus delicti had not been proved aliunde the admissions of defendants. We think the motions were clearly erroneous in their assumptions, and the evidence offered to establish the corpus delicti, though not absolutely conclusive, was highly persuasive to establish the crime of forcible rape. The prosecutrix had been knocked

unconscious by one of the defendants. The other defendants had picked her up off the ground and abducted her, driving to a secluded spot where they were joined by the defendant who had struck and assaulted her. She was found the next morning in a strange home, badly beaten and hysterical. In a prosecution for rape, the physical condition of the prosecutrix is admissible in evidence to establish lack of consent, which is one of the essential elements of the corpus delicti in forcible rape. Browning v. State, 53 Ariz. 174, 87 P.2d 112. In her vaginal tract, spermatazoa were discovered. She testified that she had not voluntarily had intercourse for a period of over a year. These circumstances were all proved independently of the statements. Defendants' contention that the corpus delicti cannot be proved by the admissions of the defendant alone is absolutely correct, but when the body or corpus of the crime is reasonably proved by direct or circumstantial evidence as here the defendant's admissions, along with the other evidence and circumstances, are always admissible to show defendant's connection therewith. State v. Winner, 17 Kan. 298; State v. Hunter, 50 Kan. 302, 32 P. 37. The reasonable rule to which we subscribe is understandingly set forth in State v. Cardwell, 90 Kan. 606, 135 P. 597, 598, L.R.A. 1916B, 745, as follows:

"* * * That a bald confession of one that he has committed a certain crime, without other evidence or circumstances to corroborate the confession, will sustain a conviction is, we believe, nowhere contended. But it seems to be the general rule, in the states having no express provision requiring evidence that a crime has been committed before incriminating admissions may be introduced against an accused, that any pertinent fact in a criminal case, including the corpus delicti, may be established by evidence of admissions of guilt by the accused, supported by circumstantial evidence tending to corroborate the admissions, provided all the evidence is sufficient in the estimation of the jury and trial court to establish the guilt of the accused beyond a reasonable doubt. To this may be added the reasonable rule that the law demands, and only demands, the best proof of the corpus delicti which, in the nature of the case, is attainable."

Defendants' admissions were not admissions of guilt. Their statements were that the prosecutrix had voluntarily submitted to the several acts of sexual intercourse. It is not out of place to observe here that the jury were not compelled to believe every part of these statements, but could attach such credit to any part thereof as it deemed it worthy of belief and reject the remainder. Mangum v. United States, supra.

In the case of State v. Benham, 58 Ariz. 129, 118 P.2d 91, defendant was convicted of manslaughter growing out

of an automobile accident. The contention there was that the corpus delicti had not been proved aliunde the defendant's admissions or confession. In that case it might be inferred from the language used that the corpus delicti of the crime must be proved beyond any question. The court in that case observed that the evidence did conclusively show that the body of the crime had been proved beyond any question and determined that the defendant's admissions or confessions were admissible. In view of the cases cited in support of the court's observations, we do not believe that it was intended to convey the impression that the corpus delicti must be conclusively established aliunde any admissions or confession. For instance, in the case of Douglas v. State, 26 Ariz. 327, 225 P. 335, 337, defendant had been convicted of the killing of a cow. The corpus delicti was established by circumstantial evidence. On the premises of defendant, behind some brush, in a gunny sack, was found a fresh cow hide branded with the "heart" brand of cattle belonged to a person other than the defendant. Fresh signs indicated that the slaughterhouse had been reecntly used for butchering. The owner of the "heart" brand testified that no person had been given permission or authority to take or kill any of the "heart" cattle. The court observed that there was no direct evidence as to where the animal was taken or where it was killed, and that the evidence of the corpus delicti was entirely circumstantial. In this behalf, the court said:

"* * * There is no fact or circumstance shown by the evidence for the state that such taking was not felonious, nor did the defendant undertake to show or suggest any. It is true a conviction cannot be sustained upon the mere confession of the accused that he took the animal, but the confession, when freely and voluntarily made, · the corpus delicti being established, even though by purely circumstantial evidence, is sufficient to sustain the conviction. 25 Cyc. 120; Underhill's Criminal Evidence (3d Ed.), p. 654; Wharton's Criminal Evidence, vol. 2, pp. 1681 and 1813; McCann v. State, 20 Ariz. 489, 182 P. 96; People v. Alviso, [55 Cal. 230], supra; Jackson v. State, 10 Okl.Cr. 525, 139 P. 324; Kinzer v. State, 15 Okl.Cr. 267, 176 P. 92; People v. Vedal, 28 Cal.App. 366, 152 P. 438; State v. Scott, 86 Wash. 296, 150 P. 423, L.R.A. 1916B, 844."

The situation in that case was not entirely dissimilar from the proof situation here. In the Douglas case, the owner of the brand testified that he did not give anyone permission to take or kill any of his cattle. In the instant case, the prosecutrix testified that she had not voluntarily had sexual intercourse with anyone since her divorce from her husband over a year prior to the time of the alleged offense. The general rule as to the suf-

ficiency of the evidence in a rape prosecution to establish the corpus delicti is set forth in 52 C. J. sec. 119, p. 1089, reading as follows:

"* * * However, only such proof of the corpus delicti is demanded as is, in the nature of the case, attainable; and the corpus delicti may be proved by extrajudicial admissions without corroborating circumstances, or by the testimony of the prosecutrix and corroborating circumstances, or by circumstantial evidence. * * *"

We therefore conclude that while the corpus delicti may not be established by the admissions or confession alone of the defendant, it may be established by such admissions or confession in connection with other facts and circumstances. Austin v. State, 51 Tex.Cr. 327, 101 S.W. 1162; Misenheimer v. State, 73 Ark. 407, 84 S.W. 494. All the facts and attendant circumstances in the instant case pointed unerringly to the crime of forcible rape and the jury was warranted in finding the defendants guilty.

The essential guilt of rape consists of the outrage to the person and feelings of the female. Defendants ravished this female in brute animal fashion. There is no merit to defendant Cruz' assignment that sentence was illegal and excessive. State v. Carter, 66 Ariz. ——, 182 P.2d 90. Especially is this true in view of the liberal provisions of our statutes relating to deductions from sentence for labor performed. Sections 47-108 and 47-109, A. C.A. 1939, as amended.

There being no reversible error in the record, and the evidence being amply sufficient to sustain the convictions, the judgments are affirmed.

STANFORD, C. J., and UDALL, J., concur.