[Criminal No. 800. Filed April 1, 1935.]

[42 Pac. (2d) 1102.]

W. A. McCREIGHT, Appellant, v. STATE OF ARIZONA, Respondent.

Messrs. Cox & Moore, for Appellant.

Mr. Arthur T. La Prade, Attorney General, Mr. P. H. Brooks, Assistant Attorney General, Mr. John L. Sullivan, Attorney General, and Mr. Wallace A. Clark, Assistant Attorney General, for Respondent.

LOCKWOOD, C. J.—W. A. McCreight, hereinafter called appellant, was informed against by the county attorney of Maricopa county for the crime of murder in the first degree. To this information he pleaded not guilty. He was tried before a jury which returned a verdict of guilty of manslaughter, and after the judgment was rendered thereon he appealed.

There are some twelve assignments of error, which are properly grouped by appellant under appropriate propositions of law. Most of the assignments deal

with various instructions given by the court, but we think it unnecessary to discuss these particular assignments at length, as the case must be determined on two other matters. It is sufficient to say that while a number of the instructions, if taken separately or in conjunction merely with part of the remaining ones, might be considered as erroneous, yet when they are considered as a whole we believe that the law governing the case was fairly stated in such a manner that the ordinarily intelligent juror would not have been misled as to his duty. The only point on which they are subject to serious criticism is that perhaps it was not made as explicit to the jury as it should have been that in order to limit the right of self-defense a defendant must not only have intended to provoke his adversary to make the first overt act, but he must have done something which would be reasonably calculated to so provoke him.

■ There are, however, two assignments of error which raise more serious questions. The first is that a certified copy of the transcript of the testimony of Loui Killeen at a previous trial of the case was admitted in evidence without the proper preliminary showing. Ordinarily speaking, a defendant is entitled to be confronted at the trial with all witnesses whose testimony is offered against him. There is, however, an exception to this rule in Arizona, as well as in most other jurisdictions. Under certain circumstances, the testimony of a witness at a previous trial of a defendant may be offered in evidence under section 5058, Revised Code 1928, which reads as follows:

"5058. *Use on second trial of testimony of deceased or absent witness.* Whenever in any court of record the testimony of any witness in any criminal action shall be reported by an official court reporter and certified by him to be correct, and thereafter said witness shall die or be beyond the jurisdiction

of the court in which the cause is pending, and his absence is not procured by the party offering the evidence, either party to the record may read in evidence the testimony of said witness in any subsequent trial or proceeding had in the same cause, subject only to the same objections that might be made if said witness were upon the stand and testifying in open court.''

The question arises as to whether the conditions of the section just quoted were complied with before the transcript was admitted in evidence. It does not appear from the record whether any subpoena was ever issued for Killeen, or what, if any, effort was made by the officers to secure his attendance at the instant trial. So far as we can discover, the only showing made to sustain the admission of the transcript was the testimony of the missing witness' sister-in-law, Mary Gold, who stated that she knew that at the time of the trial he was in El Paso, Texas. On cross-examination, however, she gave as her reason for knowing this fact that she saw him when he left her house with his wife and another sister-in-law. Taken in the strongest manner in support of the state's case, this merely amounts to a statement by the witness that she knew the missing witness was in El Paso, Texas, because he left her house with his wife, intending to go there. We have passed upon the question of what showing it is necessary to make in order to introduce evidence of the kind in question, in the cases of *Valuenzuela* v. *State,* 30 Ariz. 458, 248 Pac. 36, and *Sam* v. *State,* 33 Ariz. 383, 265 Pac. 609. In the Valuenzuela case, *supra,* we held that the issuance of a subpoena for the missing witness, and an affidavit by a deputy sheriff that he had been unable to find him, but believed him to be in the state of Nevada, was insufficient to justify the admission of the transcript. It is true that we held the law did not provide specifically how the

absence of the witness should be established, but we intimated that part at least of the proof should be made by witnesses who afforded an opportunity to the defendant to cross-examine them as to their knowledge of the death or absence of the missing witness.

In the Sam case, *supra,* the proof was made by the subpoena, and its return, showing that the witnesses could not be found within the county, together with the oral testimony of the sheriff of the county who stated that he had requested the sheriffs of every county in Arizona to search for the witnesses; that he had had his own deputies search every community in his county; and that each reported to him that they could not be found, and that he had been informed by the son of one of the missing witnesses that both of them were in California. This showing was held to be sufficient to justify the court in admitting the transcript.

■■ The showing in the present case falls far short of that which was held sufficient in the Sam case. There a subpoena was regularly issued and return of inability to serve made thereon. In the present case it does not appear a subpoena was ever issued. In the Sam case the sheriff himself testified as to an extended and, indeed, an unusually thorough search in the entire state, as well as his own county, for the missing witnesses, made without avail, and to the positive and unqualified statement to him, made by the son of one of the missing witnesses, that both of them were in California. In the present case there is nothing but the statement of the missing witness' sister-in-law that he was in Texas at the time of the trial. This, if unqualified, or if qualified by further testimony which showed a positive knowledge on her part of the location of the witness, might perhaps have been enough. But when her cross-

examination showed that her only reason for testifying that he was in Texas at the time of the trial was, in substance, that he left her home at some indefinite but previous time intending to go there, we think it is extending the rule too far, and that it was an abuse of discretion for the trial court to admit the transcript on this showing alone. That the evidence contained in the transcript was prejudicial is shown by an examination thereof.

■■ This, however, is not the only material error in the case. The record shows that the killing arose over a dispute as to the possession of certain real estate. The undisputed testimony is that the real estate at one time was owned by Charles A. Stauffer. He sold it under a conditional installment contract to one Grahalve, who in turn assigned the contract to Alberto Lopez, the deceased, who went into physical possession of the property. Lopez eventually defaulted in his payments, and the contract was declared forfeited and the property was by Stauffer resold to appellant. There were several small buildings located thereon, and deceased, after the forfeiture, and up to his death, continued in active and actual possession of at least one of them. Appellant, after his purchase, attempted to have some of the other unoccupied buildings on the premises repaired, but the workmen whom he sent there for that purpose were driven away by deceased, the latter claiming that he was still in lawful possession of all of the premises and intended to retain such possession. Thereafter appellant went to the premises, and an altercation arose between him and deceased, which finally resulted in the killing. The court permitted evidence to be offered not only as to these facts, which was properly admitted as showing the situation out of which the difficulty arose, but also, over the objection of appellant, allowed the

state to show in detail the various payments which had been made by deceased on his contract of purchase. Had there been a dispute as to whether or not the contract of purchase had actually been forfeited, so that deceased was no longer entitled to possession of the premises, evidence would have been admissible as to what payments had been made by him, to aid in the determination of the right of possession. It was not disputed, however, by the state that the forfeiture had actually occurred, and that appellant was entitled to the possession of the premises. Such being the case, we think evidence of the amount which deceased had paid on the contract was irrelevant and that its admission was highly prejudicial as being calculated to arouse sympathy with deceased in the minds of the jury, and thus to mislead them as to what were the respective rights of deceased and appellant in regard to possession of the premises, and their actions in maintaining such possession.

For the foregoing reasons, the judgment of the superior court of Maricopa county is reversed and the case remanded for a new trial.

McALISTER and ROSS, JJ., concur.