[Criminal No. 956.   Filed May 18, 1945.]

[158 Pac. (2d) 669.]

THE STATE OF ARIZONA, Appellee, v. FRANK MILLER, Appellant.

Mr. T. A. Carson, for Appellant.

Mr. Max T. Layton, County Attorney, for Appellee.

STANFORD, C. J.—The defendant was found guilty of murder in the first degree and the death penalty was fixed. He has appealed to this court.

For the purpose of a better understanding of the facts in this case we will style the state the plaintiff and Frank Miller the defendant.

As well as we can gather the facts they are as follows: In Safford, Arizona, the colored people had a place called "Arizona Lodge" where there was a bar and place to play cards. This defendant had been playing cards on the evening of May 13, 1944, with Walter Smith, another colored man, who was also known as "Curley." After the defendant had played cards for awhile he left the establishment and returned again between the hours of ten and eleven p. m. When he returned Walter Smith, the deceased, was playing cards with other individuals. The defendant asked Smith to let him enter the game. Some question arose about the sum of 25¢ which this defendant had placed upon the table and because it was not returned by deceased when defendant requested the return of it to him, defendant struck deceased with the blade of a

knife which caused death. After striking deceased the defendant went to the bar nearby and as he approached the bar one of the men, who was playing with him at the table, struck him and took his knife from him.

That night Dr. D. E. Nelson viewed the remains of deceased at the Butler Clinic in Safford. On the following day, May 14th, he held a post mortem examination in order to determine the cause of death and determined death to have resulted from the wound caused by the blade of some instrument; that the wound, as Dr. Nelson testified,

" . . . was about a three quarter inch wound on the chest a little to the left and another scratch going down the breast bone. This little wound had pierced the skin and gone in but I was unable to tell whether that was the cause of death at that time that's the reason the post mortem was held.

"The body was opened up and we found that this wound connected internally with the large blood vessel that carries the blood from the head and arms—this had been pierced by the instrument—maybe a quarter of an inch and had caused this internal bleeding that caused death."

The defendant submits six assignments of error committed by the trial court. The one we will dwell on is the following instruction, which is assigned as reversible error:

"The defendant has offered himself as a witness in his own behalf. The statutes give him that right, and you should consider his testimony as you would that of any other witness. However, in determining the credit to be given his testimony you may consider the very great interest he must have and feel in the result of this case, and the effect which a verdict would have upon him, and determine to what extent, if any, such interest may color his testimony or affect his credibility. If his statements be convincing and carry with them belief in their truth, you have the right to receive and act upon them; if not, you have a right to reject them."

From 26 Am. Jur., Homicide, Secs. 521, 522, p. 519, we quote:

"521. *Credibility of Accused as Witness.*—Instructions relating to the credibility of the accused as a witness are governed by the rules applicable to instructions relating to persons who testify in their own behalf when accused of other crimes. In any case, the humane provision of the law, that the person accused is a competent witness, should not be defeated by hostile intimations of the trial judge. The view has been taken that where one on trial for homicide testifies in his own behalf, he is entitled to have the jury instructed that the law gives him the right to testify in his own behalf, and the jury have no right to disbelieve him simply because he is the defendant, but his testimony is entitled to just as much faith and credit as, under all the circumstances, the jury think it ought to have, and his testimony is just as entitled to consideration as that of any other witness who testifies in the case. It is said that so to instruct the jury is not to tell the jury how much consideration or what credence the evidence should have, but merely to inform them that his testimony is to be considered and given such weight as the jury think it is entitled under the circumstances, to have."

"522. *Singling Out Evidence.*—In prosecutions for homicide as in other prosecutions, instructions which single out and give undue prominence to a part of the evidence should not be given. . . . "

Also we quote from Sec. 565, of said Volume, p. 552:

" . . . When the defendant offers himself as a witness in his own behalf, he is no more to be visited with condemnation than he is to be clothed with sanctity, simply because he is under accusation, and there is no presumption of law in favor of or against his truthfulness. . . . "

In our case of *Erickson* v. *State,* 14 Ariz. 253, 127 Pac. 754, 757, the defendant was indicted by the grand jury for falsely representing himself to be an attorney at law, a felony. On appeal, after conviction, de-

fendant complained of the following instruction given by the trial court:

" . . . 'The defendant in this case has been sworn as a witness in his own behalf in this case, and you are instructed that his testimony should be weighed as that of any other witness; but you are at liberty to consider the very great interest which he has in the result of your verdict.' "

The court, in rendering its opinion, said:

"Since the adoption of our Constitution, we think we should go further and hold that such instruction is not only 'undesirable,' but error. Section 12, art. 6, Constitution of Arizona, is: 'Judges shall not charge juries with respect to matters of fact nor comment thereon, but shall declare the law.' Any instruction that directs the jury's attention particularly to the testimony of the defendant and authorizes them to consider its comparative weight, with an implication that its value is to be tested by a rule different from the rule applicable to the testimony of any other witness, is certainly a charge 'with respect to matters of fact.' While the instruction in this case is mild, compared with the usual instruction upon defendant's testimony, it is, nevertheless, objectionable. We do not want to be understood as announcing that such instruction would be considered as sufficient ground in every case for reversing the judgment; for the above provision of the Constitution must be construed in connection with section 22, art. 6, of the Constitution, which provides that: 'No cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done.' But, as such instruction is not the law, the trial courts should never give it.

"The California courts, under a constitutional provision similar to ours (but not as prohibitive), in their later decisions are holding instructions of like import to the one in this case reversible error. We quote, as expressing our views, from *People* v. *Borrego*, 7 Cal. App. 613, 95 Pac. 381, 382: 'The criticism of this instruction by the Supreme Court in numerous cases, and its repeated cautioning against the giving of it having

gone unheeded, it is at last declared, in *People* v. *Maughs*, 149 Cal. 263, 86 Pac. 187, that in all future cases its giving on behalf of the prosecution would be sufficient to justify a reversal of the judgment. The instruction is, in effect, an argument against the defendant upon a matter of fact delivered by the court. As said in *People* v. *Winters*, 125 Cal. 330, 57 Pac. 1067, the credit to be given to the testimony of the defendant, like that of any other witness, is a matter with which the court has nothing to do. To give such an instruction is to expressly disparage the defendant—"the very thing that a court has no authority to do, in view of our constitutional provision." *People* v. *Ryan*, 152 Cal. 364, 92 Pac. 853.' "

In *Garrett* v. *State*, 25 Ariz. 508, 219 Pac. 593, 594, the appellant's sole defense was an alibi in a case of robbery, and the trial court gave this instruction:

" 'Gentlemen, on the question of the alibi defense offered by this defendant, the testimony is in irreconcilable conflict. The defendant could not have been at these two places at the same time, and in this contradiction of witnesses the jury have to determine for themselves where lies the truth. In so judging you will take into consideration the appearance and apparent candor and fairness of the respective witnesses, the probability of their statements, its coincidence with other facts or features of the case which they may deem established, and, generally, those rules of ordinary experience and general observation by which intelligent men decide as to the controverted propositions of fact. The effect of an alibi when established is like that of any other conclusive fact presented in a case. Showing, as it does, that the party asserting it could not have been present at the time of the robbery, and therefore did not participate in it, is, when credited, a defense of the most conclusive and satisfactory character. The fact, however, which experience has shown, is that an alibi as a defense is capable of being and has been occasionally successfully fabricated, that, even when wholly false, its detection may be a matter of very great difficulty, and that the

temptation to resort to this as a spurious defense may be very great, especially in cases of importance.'"

This court in its closing remarks in that case said:

"It may be that the court's instruction disparaging the testimony concerning the alibi as a defense affected the verdict of the jury, and, since it was error to give such instruction, we feel compelled to reverse the case, and remand it, with the direction that a new trial be granted the appellant."

In the instant case the trial court particularly called attention to the credibility of the defendant's testimony as follows:

" . . . and determine to what extent, if any, such interest may color his testimony or affect his credibility."

The instruction, it can be seen, directs the jury's attention to the testimony of defendant with respect to matters of fact, and is in direct violation of our constitution, Section 12, Article 6, which reads:

"Judges shall not charge juries with respect to matters of fact nor comment thereon, but shall declare the law."

■ There is a recent case in California, *People* v. *Brown,* 22 Cal. (2d) 752, 141 Pac. (2d) 1, 4, which does not follow prior decisions, some of which were mentioned in the Erickson case. The holding in this California case may have resulted in substantial justice under the facts of that case which are not fully disclosed in the court's opinion. The Supreme Court of California has repeatedly recognized that this instruction is not merely technically incorrect but is fundamentally wrong, as evidenced by the following quotation from this case:

"The vice of the instruction here given is in calling particular attention to the testimony of the defendant, The rule covered by the instruction should be stated in general terms and the jury should be left without sug-

gestion of its application to any particular witness . . . ''

The conviction in that case was confirmed for the reason that the court could not conclude that a miscarriage of justice had resulted by the giving of the instruction in view of their constitutional provision, which is similar to Section 22, Article 6, of our Constitution, which is as follows:

'' . . . No cause shall be reversed for technical error in pleading or proceedings when upon the whole case it shall appear that substantial justice has been done.''

In the instant case, a complete examination of the testimony discloses that the affray was a thing of the moment. The attending circumstances do not disclose an abandoned and malignant heart on the part of the defendant. There was no appreciable time for deliberation and premeditation. The defendant was the only one capable of testifying as to the motive and the state of mind that prompted him to make the assault. In view of this state of affairs, we feel that this instruction, admitted by all authorities to be a disparaging comment upon the testimony of the defendant cannot be overlooked. In view of all the attending circumstances, we feel that the giving of the instruction complained of was substantial error and deprived the defendant of substantial justice.

■■ The record discloses that after defendant's arrest, and prior to his arraignment, he was taken to the office of the county attorney and examined at length. His statements made to the County Attorney were introduced in evidence. We have heretofore held that statements made by a defendant to a prosecuting attorney, or to a peace officer, if voluntary may be introduced in evidence. However, the facts indicate that this defendant was a young negro of very little education. Under such circumstances as a basis for the introduction of such statements there should be a clear

showing that the accused understood his rights, knew what he was doing and that his action was entirely voluntary.

The criminal code makes it the duty of an officer, when he arrests a person by virtue of a warrant, to take the defendant before a magistrate without unnecessary delay. The same rule applies when an arrest is made without a warrant. In such a case, the defendant must be taken before the nearest or most accessible magistrate. A private person who makes an arrest is under the same duty. Sections 44-107, 44-140, 44-141, Arizona Code Annotated 1939. The law does not in terms prevent either a prosecuting attorney or a peace officer from securing statements from a defendant after his arrest, and prior or subsequent to his arraignment, but the introduction of such statements in evidence can be upheld only where they are wholly voluntary.

Other assignments of error need not be considerd.

The judgment is reversed and case remanded with directions to grant a new trial.

LaPRADE and MORGAN, JJ., concur.