211 P.2d 469

**STATE v. JOHNSON.**

No. 992.

Supreme Court of Arizona.

Nov. 21, 1949.

V. L. Hash, of Phoenix, attorney for appellant.

Fred O. Wilson, Attorney General, Maurice Barth, Asst. Atty. Gen., Warren L. McCarthy, Maricopa County Attorney, Phoenix, for the State.

## DE CONCINI, Justice.

Defendant was informed against and tried in the Superior Court of Maricopa County for the murder of one William B. Allen. The jury found him guilty of murder in the second degree. He was sentenced to serve from ten to twelve years in the Arizona State Penitentiary, and from this judgment he appeals.

Defendant's wife, Mary K. Johnson, made a chance "pick-up" acquaintance with said Allen on the 22nd day of April, 1948, and left Phoenix, Arizona, with him on the same day. The couple toured several states. Mrs. Johnson kept her husband, the defendant, advised of her whereabouts by constant requests for money. In June, 1948, they returned to Arizona and lived in Yuma purportedly as man and wife. Defendant Johnson, hearing they were in Yuma, went there to see if she would sign papers in connection with a pending divorce action which he had filed after her departure. He found the couple in a hotel room together and summoned the police officers. The officers told him they could do nothing because they had no warrant for the arrest of either of the parties. Defendant Johnson then returned to Phoenix. Later defendant's wife and William B. Allen went to Mesa, Arizona. On the 12th day of July, they stopped in at the barber shop of Aubrey Johnson, brother of defendant, on East Van Buren Street in Phoenix. While they were there the defendant Johnson made his appearance, and the usual small talk ensued. During that time Allen remarked that he had taken defendant Johnson's wife away from him, and that he could have her without being married to her. The parties all drank some whiskey and became somewhat intoxicated. Finally it was decided that they

would go to defendant's home on South 20th Street near Baseline Road to get Mrs. Johnson's clothes. Defendant drove the car, Allen sat next to him, and defendant's wife next to Allen—all in the front seat. Allen taunted defendant by making obscene remarks and exhibiting lewd physical conduct toward defendant's wife. At a point on Baseline Road, she, for some reason, shut off the ignition of the car. Allen turned it on; she turned it off again. Then she and Allen got out of the car. Johnson proceeded to his home, but in a short period of time came back to where the couple was standing. He stopped his car across the road, alighted, and fired at Allen with a 22 rifle, shooting him a number of times both before and after he died. Defendant immediately phoned the sheriff's office and told them what he had done. He was arrested by the sheriff's deputies at about 5 p. m. on that day.

Defendant appeals on five assignments of error. Assignments 1, 2, 3, and 4 all deal with the admissibility of evidence. Numbers 3 and 4 will be taken up together. We shall treat only the portions meriting attention.

■ The error complained of is that the court permitted a deputy sheriff and a newspaper reporter to testify that immediately after defendant was picked up and brought to the courthouse he told them he had just killed a man, this on the ground that such statements amounted to a confession and the proper foundation had not been laid for the admissibility of such evidence. This contention will be disposed of together with assignment of error No. 1.

The first assignment of error deals with the introduction of Exhibit "H" to which there was no objection by defendant's counsel. Exhibit "H" was a reporter's transcript of a statement made by defendant to a deputy county attorney, the sheriff, and one deputy sheriff, telling how, when, where and why he killed deceased.

Defendant relies strongly on State v. Miller, 62 Ariz. 529, 158 P.2d 669, 672. We quote:

"The record discloses that after defendant's arrest, and prior to his arraignment, he was taken to the office of the county attorney and examined at length. His statements made to the County Attorney were introduced in evidence. We have heretofore held that statements made by a defendant to a prosecuting attorney, or to a peace officer, if voluntary may be introduced in evidence. However, the facts indicate that this defendant was a young negro of very little education. Under such circumstances as a basis for the introduction of such statements there should be a clear showing that the accused understood his rights, knew what he was doing and that his action was entirely voluntary." We further quote from the same case:

" * * * The law does not in terms prevent either a prosecuting attorney or a peace officer from securing statements from a defendant after his arrest, and

206

prior or subsequent to his arraignment, but the introduction of such statements in evidence can be upheld only where they are wholly voluntary."

■■ The law on when confessions are admissible in situations such as this is well established in this jurisdiction. See Kermeen v. State, 17 Ariz. 263, 151 P. 738; Indian Fred v. State, 36 Ariz. 48, 282 P. 930; Lawrence v. State, 29 Ariz. 247, 240 P. 863, certiorari denied 269 U.S. 585, 46 S.Ct. 201, 70 L.Ed. 425; State v. Romo, 66 Ariz. 174, 185 P.2d 757; State v. Smith, 62 Ariz. 145, 155 P.2d 622. The admissibility of a confession depends on whether or not it was freely and voluntarily made. The admissibility in the first instance is necessarily a question of law for the trial judge. If it is received in evidence it is for the jury to determine whether the confession was freely and voluntarily made. In the case at bar there was no showing by defendant of it's being involuntarily made. Quoting from Exhibit "H", testimony of defendant:

"Q. Well, is that everything; you told the truth, Earl? A. That's right.

"Q. I haven't made any threats toward you, have I? A. No.

"Q. I haven't made any promises to you? A. No, you haven't made no promises.

"Q. And you have hold me this of your own free will? A. Certainly, and I have more to tell whenever * * *."

■ From the foregoing it is evident that the statements were voluntarily made. Furthermore there was no necessity for the court or jury to pass on the question as to whether they were freely and voluntarily made because they were introduced and received in evidence without objection. To further "gild the lily" the exhibit was introduced by the state in rebuttal to show some variations of defendant's story as to his movements and actions before, after, and during the enactment of the crime. Defendant previously took the stand in his own behalf and admitted he shot and killed deceased. His statements in Exhibit "H" merely corroborated his own testimony. In view of the facts and circumstances in this case and in light of the foregoing authorities we find no error in its admission.

■■ The same rule applies to the testimony of the deputy sheriff and newspaper reporter. Defendant's statements to them were admissions against interest and were admissible. While his statements admit the killing, yet they did not quite reach the dignity of a confession and therefore did not require the same foundation. Defendant's statements to them were exculpatory by way of justification for his acts. Such statements against interest are admissible. State v. Romo, supra; McDaniels v. State, 62 Ariz. 339, 158 P.2d 151.

■ We find no error in defendant's being taken before a court reporter for a statement prior to his appearance before a

magistrate. Miller v. State, supra. There was no unnecessary delay. Defendant was not picked up until 5 p. m. or after. He talked to the deputy sheriff in the court-house between 5:40 and 6 p. m., and made his statement to the officers and the court reporter at 6:30 p. m. One can see there was no unnecessary delay in questioning defendant on that day. Furthermore this court will take judicial notice that at that hour of the day the office of the magistrate is usually closed.

Defendant's assignment of error No. 2 was that the court erred in admitting Exhibit "C" in evidence (being an en-velope containing four 22 caliber shells, with the following writing on the envelope: "3 in mag., 1 in barrel. 4-22 shells taken from 22 rifle, Springfield J. Stevens Co. Model 87A. Picked up at Earl W. John-son home 1/4 miles south of Baseline Road on 20th St. by Stockton and Frank and Hathway.") for the reason that the writing was not done in open court and defendant was deprived of the opportunity of cross-examining the parties who did the writing. These shells were taken from the gun, Ex-hibit "D" in evidence, by E. B. Stockton, whose name appears on the envelope. It was the same gun that defendant admitted he used to shoot the deceased. Stockton identified the shells as follows:

"Q. Were these shells still in the gun? A. There were three shells in the maga-zine and one in the barrel.

"Q. Did you take them out? A. I did.

"Q. I hand you State's Exhibit "C" for identification and ask you to state what these are. A. Those are 4 shells that were taken, three from the magazine and one from the barrel of the automatic 22.

"Q. Is that the 22 that Mr. Johnson gave you? A. That is the 22 he said was the gun he used.

"Mr. Young: (Counsel for defendant) No objection.

"The Court: It may be received in evi-dence. (Article received in evidence and marked State's Exhibit C.)"

From the foregoing it can be plainly seen that the writing was innocuous and surplusage, in view of the positive identi-fication of the exhibit by witness Stockton and the admissions of the defendant. There was no error.

Defendant's fifth and last assignment of error is "That the State wholly failed to prove the crime of 'murder with malice aforethought' and the court erred in its failure to instruct the jury to return a ver-dict of 'not guilty' of murder."

The evidence is replete with testimony, including defendant's, that he, defendant, killed Allen; that Allen was not armed; that he did not threaten defendant; and that he was not coming toward defendant when defendant shot him. The court did not err by failing to instruct the jury to find defendant not guilty.

As to the proposition that the evidence does not prove the crime of "murder with

malice aforethought," we again disagree with defendant. Defendant relies on his justification for killing Allen because he was a bad man, and that he provoked defendant by his actions with defendant's wife. The court heretofore has held—"It is just as serious in the eye of the law to murder a bad man as a good man." Campbell v. Territory, 14 Ariz. 109, 125 P. 717, 720.

 In State v. Ponce, 59 Ariz. 158, 124 P.2d 543, 544, this court said:

"When the state has proved a homicide by a defendant, the presumption is that he is guilty of murder unless the state's evidence tends to show the contrary, and it is incumbent upon defendant to contradict that presumption. Miranda v. State, 42 Ariz. 358, 26 P.2d 241; Viliborghi v. State, 45 Ariz. 275, 43 P.2d 210." See Moore v. State, 65 Ariz. 70, 174 P.2d 282; Sullivan v. State, 47 Ariz. 224, 55 P.2d 312.

Apparently the defendant is attempting to invoke the "unwritten law" of settling the differences between men arising out of the "eternal triangle." The place for that was before the jury in the trial court. It is not the province of the Supreme Court to reverse a judgment where there is reasonable evidence to support it. In this case the defendant had a fair trial. The judge in the lower court properly instructed the jury and gave it a choice of six verdicts, including "guilty of manslaughter" and two verdicts of "not guilty." The jury heard the witnesses and had opportunity to observe their demeanor, their interest in the case, and to weigh their credibility. We find no reversible error in the record of this case. Judgment affirmed.

LA PRADE, C. J., and UDALL, STANFORD, and PHELPS, JJ., concurring.