320 P.2d 446

**STATE of Arizona, Appellee,**

v.

**Richard Lewis JORDAN, Appellant.**

No. 1101.

Supreme Court of Arizona.

Jan. 14, 1958.

W. Edward Morgan and Lawrence Ollason, Tucson, for appellant.

Robert Morrison, Atty. Gen., Raul H. Castro, County Atty. of Pima County, and H. E. Rogge, Jr., Chief Deputy County Atty. of Pima County, for appellee.

DON T. UDALL, Superior Court Judge.

The defendant-appellant, Richard Lewis Jordan, was convicted of the crime of first

degree murder, and was sentenced to be executed. From said judgment he has perfected this appeal.

The State contended the murder was deliberate and premeditated, and was accomplished by the use of a knife held in the hands of defendant. The evidence convincingly supported these contentions.

This is defendant's second appeal from a judgment inflicting the death penalty. Our decision reversing the first conviction, because of improper remarks of the county attorney, is reported in 80 Ariz. 193, 294 P.2d 677. Included therein is a statement of facts which substantially conforms to the evidence adduced at the second trial, thus making it unnecessary to restate them.

Defendant's first nine assignments of error are based on the proposition that the state was improperly permitted to read to the jury the testimony given by Cleo Couture and Charles Couture, witnesses at the first trial. Defendant timely objected and now assigns this as error upon three grounds hereinafter stated, viz.:

 First: That the state knew the witnesses' address in Colorado and the Uniform Act, section 44–2715 A.C.A.1939 (now A.R.S., section 13–1863) extended the jurisdiction of the State of Arizona over states that have this reciprocal act. This act provides for securing, in certain circumstances, the attendance of witnesses from without the state in criminal proceed-

ings. It is urged that failure to comply with the provisions of this act renders such testimony inadmissible since no proper foundation had been laid for its admission. We are convinced the trial court correctly ruled that the Uniform Act is inapplicable in the present situation. Defendant advances the novel theory that the act actually extends the jurisdictional limits of the state so that mere absence of the witness from the State of Arizona under section 44–1822 A.C.A.1939 (now Rule 256, Rules of Criminal Procedure, 17 A.R.S.) is not a sufficient predicate upon which to introduce their testimony given at a former trial. We cannot agree. As was said in State v. Blount, 200 Or. 35, 264 P.2d 419, at page 426, 44 A.L.R.2d 711:

"The Uniform Act does not extend the jurisdiction of the courts of this state beyond its territorial limits, for this is not within the power of the legislature. The operation of the Uniform Act depends upon the principles of comity, and it has no efficacy except through the adoption of the same act by another state. California could repeal its act tomorrow and no constitutional right of any defendant in a criminal action would be touched."

The witnesses were absent from the state, residing in Colorado, hence the state having shown this complied with the statute. See, McCreight v. State, 45 Ariz. 269, 42 P.2d 1102.

■ Second: Reliance is had upon the principle that in a criminal proceeding every defendant has the right to be confronted by the witnesses against him, and the claimed lack of confrontation here rendered the testimony of the Coutures inadmissible. We hold this right of confrontation was met at the first trial, hence the witnesses being without the jurisdiction of the court the testimony was properly admitted. McCreight v. State, supra.

■■ Finally it is contended that inasmuch as the names of the witnesses were endorsed on the information, the defendant in effect was misled as he had a right to rely thereon, i. e., that such witnesses would be present in person to testify. We do not understand it to be the law that merely because the county attorney endorses the names of witnesses on an information that he must use them or have them present at the trial for cross-examination by defense counsel. It should be noted when, prior to trial, defense counsel learned the Coutures were without the state they made no effort to take their deposition nor did they ask for a continuance. Had the Uniform Act applied it has been held, under comparable statutes, that the accused could not require the state, at state expense, to secure the presence of these witnesses. State ex rel. Butler v. Swenson, 243 Minn. 24, 66 N.W.2d 1; State v. Fouquette, 67 Nev. 505, 221 P.2d 404; State v. Blount, supra.

The Uniform Act being inapplicable to the present situation and all other requirements met for the introduction of the testimony, these assignments of error are found to be without merit.

In the first trial defendant pleaded not guilty to the charge of first degree murder, and filed a notice of intention to make a defense of insanity at the time of the commission of the offense charged; and also, a defense of alibi. However, at the commencement of the second trial defendant stipulated and agreed that he claimed no rights or prerogatives under the notice of insanity in the original case, which had the legal effect of withdrawing his plea of not guilty by reason of insanity.

In the tenth to fifteenth assignments of error, inclusive, defendant contends that the trial judge committed reversible error in sustaining objections to defendant's voir dire examination of prospective jurors, as to whether jurors would be prejudiced for or against the defendant if the evidence showed he had once been in a psychiatric institution; and further that the court erred in not allowing defendant to introduce evidence at the trial on the question of his mental condition.

■ The law is well settled that a defendant on trial for his life or liberty should be allowed the privilege of making reasonable and prudent inquiries of jurors on voir dire so that he may intelligently

exercise his peremptory challenges. The case of Anderson v. State, 90 Okl.Cr. 1, 209 P.2d 721, at page 726, succinctly states this rule as follows:

"A liberal latitude should be given the defendant in the examination of jurors on voir dire to the end that it may be ascertained whether there are grounds for challenge for either actual or implied bias; also to enable the defendant to exercise intelligently his peremptory challenges."

 We agree that it is good practice for a trial judge to allow the defendant considerable latitude in framing questions propounded to prospective jurors on voir dire with regard to medical history and general background, irrespective of whether the defendant is standing on a plea of not guilty by reason of insanity or on a naked plea of not guilty. The same rule also holds true with regard to defendant's rights when evidence is adduced at the trial of his case, and the presiding judge should always try a case with "an eye single" to safeguarding the constitutional and statutory rights of an accused.

There is some merit to defendant's contention that the trial judge was too austere in his rulings sustaining objections made by the State every time the question of defendant's psychiatric history and behavior arose during the voir dire examination of jurors.

The following excerpts from the voir dire examination disclose defendant's stipulations in this regard.

"Mr. Morgan: We will say this, for the record, right now, at this point we haven't filed an affidavit of defense of insanity, *and we claim no rights or prerogatives under the notice of insanity in the original case.*"

\* \* \* \* \* \*

"The Court: Well, in order that no member of the panel will get any wrong impression from any questions that have been asked, it has been stipulated and agreed that there is no question of insanity involved in this case.

"Mr. Morgan: If the Court please, I object, that is not what we stipulated to. I stipulated that we haven't filed a notice claiming insanity under the statute period. I don't say that there isn't any element of insanity in the case.

"Mr. Castro: If the Court please, if that is the case, I would like the Court to check Section 44–1031 [Rules of Criminal Procedure, rule 212].

"The Court: I think Mr. Morgan is highly out of order in making the statement he did. He knows what the law is in connection with the question of insanity as a defense. That is what the Court is talking about, and that is what we were talking about,

that the question or stipulation is *that insanity is not raised or will not be relied upon as a defense, is that correct, Mr. Morgan?*

"Mr. Morgan: That is right." (Emphasis supplied.)

Illustrative of defendant's attitude toward the insanity matter is the testimony elicited upon the direct examination of Frank Eyman, former Sheriff of Pima County. Defendant's counsel made objections which the court sustained, as follows:

"By Mr. Castro:

"Q. Please relate that conversation, Mr. Eyman? A. * * * I said, 'What happened?' 'Why did you kill her?' He said, 'I had no more reason to kill her than I did on that other matter.' He said, 'In fact, I left her out there and I come home alone, and I don't know what happened to her after I left her.' Then I asked him once more, 'Why did you kill her?' He said, 'I don't know.' He said, *'You know, I am crazy.'*

"Mr. Morgan: I will object to any part of that conversation, Your Honor, under the previous rulings of this Court.

"Mr. Castro: If the Court please, I don't think the objection was made on the introduction of this statement. It is part of the conversation.

"Mr. Morgan: We object to the statement.

"The Court: Sustained; leave out any conversation *about Mr. Jordan saying he was crazy."* (Emphasis supplied.)

◼ It would appear that defendant's right to complain about these various rulings on voir dire questions propounded to the jurors was nullified in part at least by counsel's stipulations and objections, and we therefore hold that under all the circumstances the lower court, even though it showed some harshness in its rulings, did not abuse its discretion or commit reversible error.

◼ In the sixteenth assignment of error counsel for defendant contends that a mistrial should have been granted because a member of the jury was indirectly threatened. It appears that prior to the time the State rested its case in chief, an unnamed juror had disclosed the fact to the court her daughter had received certain veiled threats over the telephone from a party or parties unknown. Counsel for defendant immediately filed a motion for mistrial which was not acted upon by the trial judge until after the defendant had rested his case, when, in addition to denying the motion, the court said:

"* * * The juror has stated that very emphatically and sincerely, she is not worried about the calls;

hasn't thought of them any more since talking to me at first; that they will not make any difference in her decision one way or another. The Court feels she was honest and frank in her statement; that she believes she can impartially decide this case based on the evidence produced at the trial and under the instructions that the Court will give, and she stated that she will do that * * *."

It is significant that there were no affidavits presented to the court, nor testimony offered by defendant, in support of this phase of his motion for a new trial; counsel wholly relied upon the statement of the trial judge.

In the case of Young Chung v. State, 15 Ariz. 79, 136 P. 631, it was pointed out that appellant must show that he has been prejudiced by the alleged misconduct of a juror or the jury before he can predicate an appeal on the trial court's denial of a motion for a new trial on such a ground, and that principle was again stated in Rain v. State, 15 Ariz. 125, 134, 137 P. 550.

■ By way of analogy we quote from the case of Whitson v. State, 65 Ariz. 395, at page 399, 181 P.2d 822, 824, wherein the court said:

"* * * Great weight must be given to the ruling of the trial court on the question of granting or denying a motion for a new trial because of alleged misconduct of a juror. And the appellate court will not interfere with a matter so peculiarly within the knowledge of the trial judge unless an abuse of discretion exists * * *."

The defendant having failed to show any prejudice against him by reason of these alleged threats, the lower court's order denying the motion for a new trial is upheld.

The defendant raises another point of law in an additional and final assignment of error which we authorized to be filed after his appeal had been perfected. Therein it is claimed it was reversible error for the trial court to admit in evidence both written and oral statements purportedly made by defendant during the interim when he was unlawfully detained, i. e., before he was taken before a magistrate.

■ It appears that defendant was arrested, without a warrant by a deputy sheriff, in his home in Tucson at approximately 6:30 a.m. on May 26, 1954, and was not taken before the committing magistrate until the next morning. It is claimed this was a clear violation of the provisions of section 44–140 A.C.A.1939 (now A.R.S. section 13–1418), which reads:

"Duty of officer after arrest without warrant An officer who has ar-

256

rested a person without a warrant shall *without unnecessary delay* take the person arrested before the nearest or most accessible magistrate in the county in which the arrest occurs, and shall set forth the facts showing the offense for which the person was arrested." (Emphasis supplied.)

No valid excuse was shown for failing to take the defendant before a nearby magistrate on the day of his arrest. Did this unnecessary delay ipso facto make such statements inadmissible solely by reason of the violation of that procedural rule? We think not.

Defendant wholly relies upon the recent decision in Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479, which in turn reiterated the rule laid down earlier in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, and interpreted after the federal rule (Rule 5 (a), Federal Rules of Criminal Procedure, 18 U.S.C.A.) was in operation in Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100. Those cases interpret a federal rule, 5(a) supra, very similar to our statute. The effect of the federal rule is to render inadmissible confessions or incriminating statements elicited from defendants during such periods of unlawful detention. Does this involve a constitutional restraint upon state courts? We do not think such is the effect of the Mallory decision, nor does the court so indicate.

The decision in Mallory, supra, does not extend the McNabb rule. Other states have determined the federal rule has no application in the state courts under similar state statutes. For a comprehensive listing of such decisions see Annotation, 19 A.L.R.2d 1331, et seq.

This question was raised in Hightower v. State of Arizona, 62 Ariz. 351, at page 357, 158 P.2d 156, 158, wherein we stated:

"It is urged that the court violated the defendant's constitutional rights. by admitting in evidence statements made by the defendant to the county attorney after his arrest .and before being taken before a magistrate. We have just held in McDaniels v. State [62 Ariz. 339], 158 P.2d 151, that it is not reversible error to admit such statements where such statements were voluntarily given." (Citing cases.)

The test of voluntariness has been applied by this court in subsequent cases. See: State v. Johnson, 69 Ariz. 203, 211 P.2d 469; State v. Miller, 62 Ariz. 529, 158 P.2d 669. This question arose in the first Jordan case, State v. Jordan, 80 Ariz. 193, 294 P.2d 677, wherein we stated:

"* * * There was testimony tending to show that the statement to the sheriff and the written statement were voluntary, and hence they were both inadmissible in evidence." 80 Ariz. at page 200, 294 P.2d at page 682.

We do not want it understood from anything said in this decision that we approve of or condone the peace officer's failure to take defendant, without unnecessary delay, before the magistrate upon the day of his arrest. However, we hold such delay does not ipso facto make the statements inadmissible. To justify an exclusion, coercion or involuntariness must first be shown. Nevertheless the delay is a factor to be considered in determining such a question.

It is to be noted that the trial court in the instant case went the second mile by treating defendant's interim statements, both oral and written, as though they were confessions. Out of the presence of the jury it first determined the competency of such statements as evidence, and later left its credibility to the jury under proper instructions. The jury by its verdict, and the trial court in denying a motion for new trial, obviously accepted the State's version that defendant had freely and voluntarily made the statements in question after having been advised by the peace officers of his legal rights in the premises. The statements having been freely given were properly admitted.

The court-appointed counsel for defendant are to be commended for their diligence and competent work on his behalf both in the lower court and the appellate court.

In view of the nature of the offense and the gravity of the penalty imposed, we have most carefully examined the record for prejudicial error and have found none. The defendant was accorded a fair and impartial trial, and the jury was warranted in finding him guilty as charged.

The judgment is affirmed.

UDALL, C. J., and WINDES, M. T. PHELPS and STRUCKMEYER, JJ., concur.

JOHNSON, J., having announced his disqualification, the Honorable DON T. UDALL, Judge of the Superior Court of Navajo County, was called to sit in his stead.